# DEFENDANT'S EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HIGHMARK, INC., SUCCESSOR IN INTEREST TO PENNSYLVANIA BLUE SHIELD AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Civil Action No. 05-1030 T<br>Judge Margolis |

**PLAINTIFF'S SECOND AMENDED RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS**

Plaintiff Highmark, Inc., successor in interest to Pennsylvania Blue Shield and Subsidiaries, ("Plaintiff" or "PBS") by and through its undersigned counsel, hereby responds and objects to Defendant the United States' ("Defendant" or "United States") First Set of Requests for Admissions as follows. Plaintiff reserves the right to supplement its responses.

**GENERAL OBJECTIONS**

1. Plaintiff objects to each and every Request for Admission to the extent that it calls for information that is protected by the attorney-client privilege, the work product doctrine, the self-critical analysis privilege, or any other privilege or protection from disclosure. Plaintiff hereby asserts all such applicable privileges and exemptions. Any disclosure of privileged or protected information in response to any Request for Admission is inadvertent and not intended to waive those privileges.

2. Plaintiff objects to the Requests for Admissions to the extent they seek information wholly irrelevant to the claims asserted by Plaintiff and are not reasonably calculated to lead to the discovery of admissible evidence.

3. Plaintiff objects to the Requests for Admissions to the extent that Defendant already possesses or has equal access to the information sought.

4. Plaintiff objects to the Requests for Admissions to the extent that they are overbroad and harassing and any attempt to respond would be unduly burdensome, expensive and/or oppressive.

5. Plaintiff objects to the Requests for Admissions to the extent that they are vague or ambiguous.

6. Whenever in these responses Plaintiff employs the phrase "subject to and without waiving its objections," Plaintiff is responding to the particular request for admission as it may be narrowed by Plaintiff's general and specific objections and without waiver of any objections.

7. Plaintiff's responses herein shall not waive or prejudice any objections that Plaintiff may later assert. These General Objections apply to and are incorporated by reference into each of Plaintiff's specific responses and objections below, and the specific responses and objections set forth below are not to be deemed a waiver, either in whole or in part, of any of these General Objections.

**SPECIFIC RESPONSES AND OBJECTIONS**

1. Plaintiff has never capitalized the costs associated with creating healthcare coverage contracts.

**RESPONSE:** Plaintiff objects to this Request on the ground that the terms "associated with creating healthcare coverage contracts" are vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. For Federal income tax purposes, Plaintiff characterized the costs associated with creating healthcare coverage contracts as required by the Internal Revenue Code. Plaintiff further responds that to the best of its knowledge, Plaintiff did not routinely capitalize the costs associated with internally developing or otherwise acquiring healthcare coverage contracts in its financial accounting records and tax returns and that on neither its financial books and records nor its tax returns has the Plaintiff recorded an asset account containing or relating to healthcare coverage contracts, because the financial accounting rules and Internal Revenue Code did not require Plaintiff to do so.

2. In each of the years 1987 through 1996, plaintiff incurred substantial costs in creating, or facilitating the creation of, healthcare coverage contracts.

**RESPONSE:** Plaintiff objects to this Request on the ground that the term "substantial" is vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. It is admitted that in each of the years 1987 through 1996, plaintiff incurred costs in creating, or facilitating the creation of, healthcare coverage contracts.

3. The expenditures plaintiff made in the years 1987 through 1996 to create or facilitate the creation of, healthcare coverage contracts were not limited to expenditures for advertising and other selling expenses.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the terms "create, or facilitate the creation of, healthcare coverage contracts" and "other selling expenses" are vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted.

4. The expenditures plaintiff made in the years 1987 through 1996 to create, or facilitate the creation of, healthcare coverage contracts included payments to third parties for activities that helped plaintiff determine what rates to charge prospective subscribers.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the terms "create, or facilitate the creation of, healthcare coverage contracts" are vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. Subject to and without waiving its objections, Plaintiff has made a diligent search of its records and answers as follows. While Plaintiff believes that it may have made expenditures in the years 1987 through 1996 to create, or facilitate the creation of, healthcare coverage contracts including payments to third-parties for activities that helped plaintiff determine what rates to charge to prospective subscribers, Plaintiff has been unable to locate records to confirm or deny this belief. By way of further response, Plaintiff refers Defendant to an October 15, 1991 letter to Mrs. Carol Slack of the Commonwealth of Pennsylvania Insurance Department, Bates No. PBS-022265, which states that "Blue Shield spent $4550 to prepare the filings. This amount reflects the fee for an independent actuarial review of the filings."

5. A portion of plaintiff's internal costs (e.g., employee salaries and benefits) in the years 1987 through 1996 was attributable to creating, or facilitating the creation of, healthcare coverage contracts.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the terms "creating, or facilitating the creation of, healthcare coverage contracts" are vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted.

6. A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1996 was attributable to time spent reviewing applications for healthcare coverage contracts by prospective subscribers.

**RESPONSE:** Admitted.

7. A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1996 was attributable to time spent investigating and/or analyzing the claims history of prospective subscribers.

**RESPONSE:** Admitted.

8. A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1996 was attributable to time spent setting rates for healthcare coverage contracts for prospective subscribers.

**RESPONSE:** Admitted.

9. A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1996 was attributable to time spent setting rates for healthcare coverage contracts for prospective subscribers on a subscriber-specific basis.

**RESPONSE:** Admitted.

10. In the years 1987 through 1996, some of plaintiff's employees spent all or most of their time performing one or more of the following activities: (1) investigating the claims history of prospective subscribers; (2) analyzing the claims history of prospective subscribers; (3) setting rates for healthcare coverage contracts for prospective subscribers.

**RESPONSE:** Admitted.

11. In the years 1987 through 1996, some of plaintiff's employees spent at least one half of their time performing one or more of the following activities: (1) investigating the claims history of prospective subscribers; (2) analyzing the claims history of prospective subscribers; (3) setting rates for healthcare coverage contracts for prospective subscribers.

**RESPONSE:** Admitted.

12. In the years 1987 through 1996, some of plaintiff's employees spent at least one quarter of their time performing one or more of the following activities: (1) investigating the claims history of prospective subscribers; (2) analyzing the claims history of prospective subscribers; (3) setting rates for healthcare coverage contracts for prospective subscribers.

**RESPONSE:** Admitted.

13. In the years 1977 through 1996 plaintiff incurred costs associated with creating, or facilitating the creation of, healthcare coverage contracts, but unrelated to advertising or selling expenses, that contributed to the generation of subscription income and provided a long-term benefit that plaintiff realized over the lives of the contracts.

**RESPONSE:** Plaintiff objects to this Request on the grounds that many of the terms used therein are vague and undefined, including "costs associated with," "creating, or facilitating the creation of, healthcare coverage contracts," "selling expenses," "contributed to the generation of subscription income," and "long-term benefit that plaintiff realized over the lives of the contracts." Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff responds that it is admitted with respect to some, but not all, healthcare coverage contracts. However, Plaintiff notes that it recognizes revenue with respect to healthcare coverage contracts on a monthly basis as premiums are earned and collected as required by the relevant financial accounting standards.

14. Each of plaintiff's healthcare coverage contracts constitutes a separate and distinct intangible asset.

**RESPONSE:** Admitted.

15. Plaintiff has a property interest in each of its healthcare coverage contracts.

**RESPONSE:** Admitted.

16. Plaintiff's property interest in each of its healthcare coverage contracts can be sold or transferred separate and apart from the rest of plaintiff's business.

**RESPONSE:** Admitted.

17. The benefits plaintiff realizes from the expenditures plaintiff makes to create, or facilitate the creation of, healthcare coverage contracts are not fully realized within the year in which the expenditures are made.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the term "create, or facilitate the creation of, healthcare coverage contracts" is vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted that some of the benefits are not fully realized within the year in which the expenditures are made.

18. Plaintiff's healthcare coverage contracts are assets with expected useful lives exceeding one year.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and undefined. Admitted that some of Plaintiff's healthcare coverage contracts are assets with expected useful lives exceeding one year. Denied that all are.

19. Plaintiff's healthcare coverage contracts provide benefits to plaintiff for a period of time extending beyond the year in which they are entered into.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the terms "provide benefits to plaintiff for a period of time extending beyond the year in which they are entered into" are vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted that some of Plaintiff's healthcare coverage contracts provide benefits to Plaintiff for a period of time beyond the year in which they are entered into. Denied that all do.

20. Plaintiff has never sold or exchanged for consideration any of the contracts referred to in paragraph 24 of the complaint.

**RESPONSE:** Admitted.

21. In each of the years 1987 through 1996, for purposes of calculating its federal income tax liability, plaintiff deducted as ordinary and necessary business expenses certain costs incurred in creating, or facilitating the creation of, healthcare coverage contracts.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the term "creating, or facilitating the creation of, healthcare coverage contracts" is vague and undefined. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted.

22. In each of the 1987 through 1996 tax years, for purposes of calculating its federal income tax liability, plaintiff deducted as ordinary and necessary business expenses the costs referred to in number 13, supra.

**RESPONSE:** Admitted subject to Plaintiff's responses and objections to Request 13 and further subject to the qualification that plaintiff characterized the costs referred to in Request 13 as required by the Internal Revenue Code.

23. During the period January 1, 1977, through January 1, 1996, plaintiff expensed the costs referred to in number 13, supra, for purposes of its financial accounting records.

**RESPONSE:** Admitted subject to Plaintiff's responses and objections to Request 13.

24. Expensing the costs referred to in number 13, supra, during the period January 1, 1977, through January 1, 1996, was consistent with professional financial accounting standards.

**RESPONSE:** Admitted subject to Plaintiff's responses and objections to Request 13.

25. Expensing the costs referred to in number 13, supra, during the period January 1, 1977, through January 1, 1996, was consistent with applicable insurance regulations.

**RESPONSE:** Admitted subject to Plaintiff's responses and objections to Request 13.

26. On its original income tax returns for the 1987 through 1994 tax years, plaintiff did not claim deductions for terminated or cancelled healthcare coverage contracts.

**RESPONSE:** Admitted.

27. Plaintiff claimed deductions for terminated or cancelled healthcare coverage contracts for each of the 1991 through 1994 tax years by filing a formal or informal refund claim with the IRS sometime after September 1, 1995.

**RESPONSE:** Admitted.

28. Plaintiff claimed deductions for terminated or cancelled healthcare coverage contracts for the 1995 tax year on its originally filed income tax return for that year.

**RESPONSE:** Admitted.

29. Plaintiff did not secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts between the time it filed its

original income tax returns for the 1987 through 1994 tax years and the time it filed its refund claims for the 1991 through 1994 tax years.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it incorrectly assumes a change in method of accounting. Plaintiff denies that any change in method of accounting took place. Plaintiff further responds that except for the consent sought and secured by the filing of the attached document (PBS 002317-002327), which was attached to PBS's 1987 Federal Income Tax Return, Plaintiff did not secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts between the time it filed its original income tax returns for the 1987 through 1994 tax years and the time it filed its refund claims for the 1991 through 1994 tax years, because it did not change its method of accounting.

30. Plaintiff did not secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts between the time it filed its original income tax returns for the 1987 through 1994 tax years and the time it filed its original income tax return for the 1995 tax year.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it incorrectly assumes a change in method of accounting. Plaintiff denies that any change in method of accounting took place. Plaintiff further responds that except for the consent sought and secured by the filing of the attached document (PBS 002317-002327), which was attached to PBS's 1987 Federal Income Tax Return, Plaintiff did not secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts between the time it filed its original income tax returns for the 1987 through 1994 tax years and the time it filed its original income tax return for the 1995 tax year, because it did not change its method of accounting.

31. Plaintiff contends that, for the 1987 through 1996 tax years, plaintiff is entitled to income tax deductions for expenses incurred in each of those years to create, or facilitate the creation of, healthcare coverage contracts as well as deductions for losses it sustained upon the termination or cancellation of healthcare coverage contracts.

**RESPONSE:** Admitted that for the 1987 through 1996 tax years that, in accordance with the provisions of the Internal Revenue Code, plaintiff is entitled to income tax deductions for certain expenses incurred to create, or facilitate the creation of, healthcare coverage contracts as well as deductions for losses it sustained upon the termination or cancellation of healthcare coverage contracts held by plaintiff on January 1, 1987.

32. A number of the healthcare coverage contracts held by plaintiff on January 1, 1987, were terminated or cancelled in each year after 1986.

**RESPONSE:** Admitted.

33. Plaintiff intends to claim a deduction for the termination or cancellation of each healthcare coverage contract held by plaintiff on January 1, 1987, until all of the healthcare coverage contracts held by plaintiff on January 1, 1987, have ceased to be renewed.

**RESPONSE:** Plaintiff admits that it intends to claim a deduction for the termination or cancellation of each healthcare coverage contract held by plaintiff on January 1, 1987, when such contracts are actually terminated or cancelled.

34. Plaintiff made no attempt to calculate the fair market value of the contracts referred to in paragraph 24 of the complaint until the year 1998.

**RESPONSE:** Admitted, except that the effort began on or about 1995.

35. With respect to each of the following categories of information, admit or deny that plaintiff's records do not contain the information on a subscriber-specific basis for all of the healthcare coverage contracts referred to in paragraph 24 of the complaint:

(1) the subscriber's payment patterns from the contract's start date until January 1, 1987;

(2) the subscriber's claims experience from the contract's start date until January 1, 1987;

(3) the subscriber's level of satisfaction with plaintiff's services as of January 1, 1987;

(4) the existence and terms of any proposals for coverage that the subscriber received from another health insurer before January 1, 1987; and

(5) the subscriber's net annual income as of January 1, 1987.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Denied for some, but not all, as to (1), (2) and (3). Admitted for (4) and (5).

36. With respect to each of the following categories of information, admit or deny that plaintiff's records do not contain the information for all of the participants covered by the healthcare coverage contracts referred to in paragraph 24 of the complaint:

(1) the participant's history of health problems before January 1, 1987;

(2) the participant's claims experience from the contract's start date until January 1, 1987;

(3) the participant's occupation as of January 1, 1987;

(4) the participant's income level as of January 1, 1987;

(5) the participant's education level as of January 1, 1987;

(6) the participant's marital status as of January 1, 1987; and

(7) the number, sex, and age of the participant's dependents as of January 1, 1987.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Denied for (2). Admitted for (1), (3), (4), (5), (6), and (7).

37. With respect to each of the following categories of information, admit or deny that, in calculating the $21,329,919 tax refund set forth in the prayer for relief in the complaint, plaintiff did not take into account the information on a subscriber-specific basis for all of the healthcare coverage contracts referred to in paragraph 24 of the complaint:

(1) the subscriber's payment patterns from the contract's start date until January 1, 1987;

(2) the subscriber's claims experience from the contract's start date until January 1, 1987;

(3) the subscriber's level of satisfaction with plaintiff's services as of January 1, 1987;

(4) the existence and terms of any proposals for coverage that the subscriber received from another health insurer before January 1, 1987; and

(5) the subscriber's net annual income as of January 1, 1987.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Denied for some, but not all, as to (1). Admitted for (2), (3), (4), and (5).

38. With respect to each of the following categories of information, admit or deny that, in calculating the $21,329,919 tax refund set forth in the prayer for relief in the complaint, plaintiff did not take into account the information for all of the participants covered by the healthcare coverage contracts referred to in paragraph 24 of the complaint:

(1) the participant's gender;

(2) the participant's history of health problems before January 1, 1987;

(3) the participant's claims experience from the contract's start date until January 1, 1987;

(4) the participant's occupation as of January 1, 1987;

(5) the participant's income level as of January 1, 1987;

(6) the participant's education level as of January 1, 1987;

(7) the participant's marital status as of January 1, 1987; and

(8) the number, sex, and age of the participant's dependents.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Denied for some, but not all, as to (3). Admitted for (1), (2), (4), (5), (6), (7), and (8).

39. As of January 1, 1987, in setting its rates for direct pay (individual) healthcare coverage contracts, plaintiff did not take into account the subscriber's claims history.

**RESPONSE:** Admitted.

40. As of January 1, 1987, in setting its rates for group healthcare coverage contracts with fewer than fifty participants, plaintiff did not take into account the subscriber's claims history.

**RESPONSE:** Admitted.

41. With respect to each of the following categories of information, admit or deny that, as of January 1, 1987, in setting its rates for healthcare coverage contracts, plaintiff did not take into account the information for all of the participants covered by the contract:

(1) the participant's gender;

(2) the participant's history of health problems before January 1, 1987;

(3) the participant's occupation as of January 1, 1987;

(4) the participant's income level as of January 1, 1987;

(5) the participant's education level as of January 1, 1987;

(6) the participant's marital status as of January 1, 1987; and

(7) the number, sex, and age of the participant's dependents.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted.

42. With respect to each of the following categories of information, admit or deny that, as of January 1, 1987, in setting its rates for healthcare coverage contracts, plaintiff did not take into account the information:

(1) the subscriber's payment patterns from the contract's start date until January 1, 1987;

(2) the subscriber's level of satisfaction with plaintiff's services as of January 1, 1987;

(3) the existence and terms of any proposals for coverage that the subscriber received from another health insurer before January 1, 1987; and

(4) the subscriber's net annual income as of January 1, 1987.

**RESPONSE:** Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Admitted.

43. Each of the contracts referred to in paragraph 24 of the complaint had a term of one year or less.

**RESPONSE:** Admitted that some of the contracts referred to in paragraph 24 of the complaint had a term of one year or less. Denied that all did.

44. Plaintiff currently markets its healthcare coverage products to groups and individuals previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a deduction in this case.

**RESPONSE:** Plaintiff objects to this Request on the grounds that the terms "currently markets" are vague and undefined. Subject to and without waiving its objection, Plaintiff answers as follows. Plaintiff admits that it currently markets its healthcare coverage products to some of the groups and individuals previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a deduction in this case.

45. Plaintiff has sold healthcare coverage contracts to groups and individuals who were previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a tax deduction in this case.

**RESPONSE:** Admitted that Plaintiff has sold some healthcare coverage contracts to groups and individuals who were previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a tax deduction in this case.

46. Some of the groups and individuals covered by the healthcare coverage contracts at issue in this case are presently covered by subsequently issued healthcare coverage contracts held by plaintiff.

**RESPONSE:** Admitted.

47. In December, 1986, plaintiff expected an increase in enrollment losses in 1987 and subsequent years due to increased premium rates for its healthcare coverage contracts.

**RESPONSE:** Denied.

48. As of January 1, 1987, plaintiff expected to experience an underwriting loss for the year 1987.

**RESPONSE:** Admitted.

49. In December, 1986, the market for healthcare coverage contracts in Pennsylvania was very competitive due, in part, to the increasing popularity of new health insurance products, such as Health Maintenance Organizations ("HMOs"), Preferred Provider Organizations ("PPOs"), and Administrative Services Only ("ASOs").

**RESPONSE:** Plaintiff objects to this Request on the grounds that the terms "market for healthcare coverage contracts," "very competitive," and "new" are vague and undefined. Subject to and

without waiving its objections, Plaintiff answers as follows. Admitted that in December 1986, there was some degree of competition in the Pennsylvania insurance market due, in part, to health insurance products such as Health Maintenance Organizations ("HMOs"), Preferred Provider Organizations ("PPOs"), and Administrative Services Only ("ASOs").

50. Due to increased competition in the health insurance industry, as of January 1, 1987, plaintiff was expecting to be unable to continue raising its premium rates to the same extent it had done over the preceding twenty years.

**RESPONSE:** Denied.

51. Due to increased competition in the health insurance industry, as of January 1, 1987, plaintiff was expecting its subscriber attrition rate in the coming ten years to exceed the attrition rate experienced in the period 1980 through 1987.

**RESPONSE:** Denied.

52. As of January 1, 1987, plaintiff was expecting its operating margins over the coming ten years to fall short of its operating margins over the preceding ten-year period.

**RESPONSE:** Denied.

Respectfully submitted,

Arthur Newbold
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone (215) 994-2624
Fax (215) 655-2624
Counsel for Plaintiff

Date: January 23, 2007

Of Counsel:

Frederick J. Gerhart
James J. Spadaro, Jr.
Andrea M. Kirshenbaum
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

**CERTIFICATE OF SERVICE**

I certify that service of the foregoing document has, this 23rd day of January, 2007, been made on the Defendant's attorney by mailing a copy thereof to the following address:

Karen E. Servidea, Esquire
U.S. Department of Justice
Tax Division Court of Federal Claims Section, JCB/8804
555 4th Street, N.W.
Washington, D.C. 20001

Andrea M. Kirshenbaum

(55)

Form **3115** (Rev. November 1987) Department of the Treasury Internal Revenue Service

# Application for Change in Accounting Method

▶ See separate instructions.

OMB No. 1545-0152 Expires 11-30-90

Name of applicant (if joint return is filed, also give spouse's name): Pennsylvania Blue Shield
Identifying number (see instructions): 23-1294723
Address (number and street): 1800 Center Street
Applicant's area code and telephone number: (717) 763-3151
City or town, state, and ZIP code: Camp Hill, PA 17011
District Director's office having jurisdiction: Philadelphia
Name of person to contact (Please type or print.): Ronald C. Beam, Corporate Controller
Contact person's area code and telephone number: (717) 763-3230

**Check one:** ☐ Individual ☐ Partnership; No. of Partners ____ ☐ Corporation ☐ S Corporation; No. of Shareholders ____
☐ Cooperative (Section 1381(a)) ☐ Ins. Co. (Sec. 801) ☐ Ins. Co. (Sec. 831) ☐ Qualified Personal Service Corporation (See section 448.)
☐ Exempt organization; Enter code section ▶
☒ Other (specify) ▶ Tax Exempt Organization (subject to Section 501(m) to Taxable Insurance Company)

**NOTE:** *Are you making an election under section 458?* . . . ☐ Yes ☒ No
*If "Yes," see Specific Instructions for Section H. Do not fill in Section A. If "No," you must complete Section A.*

## Section A. Applicable to All Filers Other Than Those Answering "Yes" to "Note" Above

**1a** Tax year of change begins (mo., day, yr.) ▶ January 1, 1987 and ends (mo., day, yr.) ▶ December 31, 1987

**b** Enter the 180th day of your tax year ▶ June 29, 1987 If this date is earlier than date you signed this Form 3115 on page 6, see General Instruction for "Late Applications" before proceeding any further.

**2** Nature of business and principal source of income (including type of business designated on your latest income tax return) ▶ Prepaid Health Insurance

**3** The following change in accounting method is requested (check and complete appropriate spaces):

**a** ☒ Overall method of accounting: from ▶ See Section H to ____
If the taxpayer is requesting a change to the accrual method, see section 448, Temporary Regulations section 1.448-1T, Rev. Proc. 85-36 and Rev. Proc. 85-37.

**b** ☒ The accounting treatment of (identify item) ▶ See Section H
from (present method) ▶ ____ to (new method) ▶ ____
Attach a separate statement providing all relevant facts, including a detailed description of your present and proposed methods. See also item 15 of Section A on page 2 regarding the "legal basis" for the proposed change.

**c** If a change is requested under 3b above, check the present overall method of accounting:
☒ Accrual ☐ Cash ☐ Hybrid (Explain the overall hybrid method in detail in a separate statement.)

| Item | Question | Yes | No |
|---|---|---|---|
| d | Is your use of your present method specifically not permitted by the Internal Revenue Code, the Income Tax Regulations, or by a decision of the U.S. Supreme Court? See sections 4, 5, and 6 of Rev. Proc. 84-74 . See Section H . . . | | |
| e | Is the requested change specifically required by the Tax Reform Act of 1986? | X | |
| f | Are you currently under examination, or were you or any member of the affiliated group contacted in any manner by a representative of the Internal Revenue Service for the purpose of scheduling an examination of your Federal tax return(s) prior to the filing of this application, or do you have an examination under consideration by an appeals officer or before any Federal court, or is any criminal investigation pending? See sections 4 through 7 of Rev. Proc. 84-74 | | X |
| g | Are you a taxpayer that produces property or acquires property for resale to whom section 263A applies? If item to be changed is a section 263A item, section D must be completed | | X |
| 4a | In the last 6 years have you requested permission to change or have you changed your accounting period, your overall method of accounting, or the accounting treatment of any item? (Affiliated group members filing a consolidated return, see item 8e on page 2.) | | X |
| b | If 4a is "Yes," was a ruling letter granting permission to make the change issued? If "Yes," and the change was made, attach a copy of the letter. If permission was granted, but you did not make the change, attach an explanation | | X |
| c | Regardless of your response to 4a, do you or an affiliated corporation have pending any accounting method or period ruling or technical advice request in the National Office? | | X |

**d** If 4c is "Yes," indicate the type of request (method, period, etc.) and the specific issue involved in each request ▶ N/A

**5** If engaged in a business or profession: **a** Enter your taxable income or (loss)* from operations for tax purposes for the five (5) tax years preceding the year of change: (See Specific Instructions for Section A.)

| 1st preceding year ended: mo. yr. | 2nd preceding year ended: mo. yr. | 3rd preceding year ended: mo. yr. | 4th preceding year ended: mo. yr. | 5th preceding year ended: mo. yr. |
|---|---|---|---|---|
| None | Tax Exempt | Under Section | 501(c)(4) | |

**b** Enter the amount of net operating loss to be carried over to the year of change, if any . . . $ N/A
**c** Amount of general business credit carryover to year of change, if any . . . $ N/A
**d** Other credit carryover, if any. (Identify) ▶ $ N/A

*Individuals enter net profit or (loss) from business; partnerships enter ordinary income or (loss); members of an affiliated group filing a consolidated return, see item 8b on page 2.

6 Gross receipts for the three (3) tax years preceding the year of change. (See Specific Instructions for Section A.)

| 1st preceding year ended: mo. 12 yr. 86 | 2nd preceding year ended: mo. 12 yr. 85 | 3rd preceding year ended: mo. 12 yr. 84 |
|---|---|---|
| $ 1,517,899,579 | $ 1,427,320,099 | $ 1,286,431,491 |

| | Yes | No |
|---|---|---|
| 7a Do you have more than one trade or business? | | X |
| b If 7a is "Yes," do you account for each trade or business separately? If "Yes," see Specific Instructions for Section A for additional information that must be provided | | |
| 8a Is applicant a member of an affiliated group filing a consolidated return for the tax year of change? | X | |
| b If 8a is "Yes," state parent corporation's name, identifying number, address, tax year, and Service Center where return is filed, and provide the information requested in item 5 on a consolidated basis ▶ Pennsylvania Blue Shield is the parent corporation for an affiliated group of 4 subsidiaries | | |
| c If 8a is "Yes," do all other members of the affiliated group employ the method of accounting for which the change is requested? If "No," explain ▶ Other entities are continuing as taxable corporations | | X |
| d If 8a is "Yes," are any of the items involved in the calculation of the net section 481(a) adjustment attributable to transactions between members of the affiliated group? If "Yes," attach explanation . . . N/A | | |
| e If 8a is "Yes," provide the information requested in items 4a, 4b, 4c, and 4d for each member of the affiliated group. | | |
| 9a Is applicant a member of an affiliated group not filing a consolidated return for the tax year of change? | | X |
| b If 9a is "Yes," are any of the items involved in the calculation of the net section 481(a) adjustment attributable to transactions between members of the affiliated group or other related parties? If "Yes," attach explanation . N/A. | | |
| 10 If change is granted, will the new method be used for financial reporting purposes? . . . See Section H | | |
| If "No," attach an explanation. Such explanation should include a discussion of whether your new method of accounting conforms to generally accepted accounting principles and why it will clearly reflect income. | | |

| 11 Enter the net section 481(a) adjustment for the year of change, and the net section 481(a) adjustment that would have been required if the requested change had been made for each of the 3 tax years preceding the year of change. (See Specific Instructions for Section A.) | At the beginning of the year of change ended, enter: mo. yr. | At the beginning of the 1st preceding year ended, enter: mo. yr. | At the beginning of the 2nd preceding year ended, enter: mo. yr. | At the beginning of the 3rd preceding year ended, enter: mo. yr. |
|---|---|---|---|---|
| | $ Not Applicable - See Attached Appendix I | | | |

| | Yes | No |
|---|---|---|
| 12 Has net adjustment under section 481(a) for the year of change been reduced in any way by a pre-1954 amount? | N/A | |
| 13 Number of tax years present method has been used for which the change is requested in item 3a or 3b. (See Specific Instructions for Section A.) ▶ See Section H | | |
| 14 Has your present method been designated by a Rev. Rul. or Rev. Proc. more than 2 years before filing this form as a change in method of accounting to which section 5.12(2) of Rev. Proc. 84-74 applies? . See Section H | | |

15 State the reason(s) including the legal basis (statutes, regulation, published rulings, etc.) why you believe approval to make this change should be granted. See section 7 of Rev. Proc. 84-74. Filed under Rev. Proc. 87-51.
Tax Reform Act of 1986, Pub. Law No. 99-154, Section 1012.
See Section H.

## Section B-1. Change in Overall Method of Accounting

1 The following amounts should be stated as of the end of the tax year **preceding** the year of change. If none, state "None." (Although some of the items listed below may not have been required in the computation of your taxable income due to your present method of accounting, it is necessary that they be entered here for this form to be complete. Show the net section 481(a) adjustment attributable to long-term contracts on line 8, Section E, page 5.) Provide on a schedule the breakdown of the individual items which make up the "Amount" for lines 1a through 1g. See section 448, Temporary Regulations section 1.448-1T, Rev. Proc. 85-36, and Rev. Proc. 85-37 for rules to change to the accrual method expeditiously.

| | Amount | Show by (✓) how treated on last year's return: Included in income or deducted as expense | Excluded from income or not deducted as expense |
|---|---|---|---|
| a Income accrued but not received | $ | | |
| b Income received before the date on which it was earned. State nature of income. If discount on installment loans, see Section F on page 5. For advance payments for goods and services, see Specific Instructions for Section B-1. ▶ | Not Applicable See Section H | | |
| c Expenses accrued but not paid | | | |
| d Other (specify) ▶ | | | |
| e Prepaid expense previously deducted | | | |
| f Supplies on hand previously deducted | | | |
| g Inventory on hand $ Inventory reported on your return $ Difference | | | |
| h Net section 481(a) adjustment (combine lines 1a through 1g) | $ | | |

Filed Under Rev. Proc. 87-51

Form 3115 (Rev. 11-87) Pennsylvania Blue Shield 12-31-87 #23-1294723 

2 Nature of inventory ▶ Not applicable

3 Method used to value inventory: ☐ Cost ☐ Cost or market, whichever is lower ☐ Other (attach explanation)

4 Method of identifying costs in inventory: ☐ Specific identification ☐ FIFO ☐ LIFO

5 Have any receivables been sold in the past three years? . . . . . . . ☐ Yes ☐ No

If "Yes," enter the amounts sold for each of the three years

| 1st preceding year ended, enter: mo. yr. | 2nd preceding year ended, enter: mo. yr. | 3rd preceding year ended, enter: mo. yr. |
|---|---|---|
| $ | $ | $ |

6 Attach copies of profit and loss statement (Schedule F (Form 1040) in the case of farmers) and balance sheet, if applicable, as of the close of the tax year preceding the year of change. State accounting method used when preparing balance sheet. If books of account are not kept, attach copy of the business schedule provided with your Federal income tax return or return of income for that period. If amounts in 1 (Section B-1, page 2) do not agree with those shown on profit and loss statement and balance sheet, explain on separate page.

## Section B-2. Change to the Cash Method of Accounting *(Farmers complete Section B-3 instead of this section.)*

**Note:** *Also complete section B-1.* Not applicable

1 Provide a detailed statement describing the nature of the taxpayer's business. Describe the operations, services performed, and the types of activities, if more than one.

2 Provide a description of the taxpayer's investment in capital items and leased equipment used in the taxpayer's trade or business, and the relationship between these items and the services performed by the business.

3 Provide a description of any inventory item (goods, the sale of which produces income) and any materials and supplies used in carrying out the business.

4 Provide the number of employees, shareholders, partners, associates, etc., and a description of their duties in carrying out the taxpayer's business.

5 Provide a schedule showing the age of receivables for the year of change and the 3 tax years preceding the year of change.

6 Provide a profit and loss statement computed on the cash receipts and disbursements method for the year of change and the 3 tax years preceding the year of change.

## Section B-3. Change in Overall Method of Reporting Income of Farmers to Cash Receipts and Disbursements Method

**Note:** *Also complete Section B-1.* Not applicable

1 Is the taxpayer a corporation? . . . . . . ☐ Yes ☐ No

2 Is the taxpayer a partnership with a corporation as a partner? . . . . ☐ Yes ☐ No

3 If either 1 or 2 is "Yes," has the taxpayer had gross receipts of $1,000,000 or less in each of its tax years beginning after 1975? . . . . . ☐ Yes ☐ No

If "No," attach a schedule showing which years the taxpayer's receipts were more than $1,000,000.

4a Does the taxpayer produce property with a pre-productive period of more than 2 years? . . . . ☐ Yes ☐ No

b If 4a is "Yes," has the taxpayer or related party made an election out of section 263A for any trade or business? . ☐ Yes ☐ No

c If 4b is "Yes," explain.

5 Provide the following information for the five tax years before the year of change:

| | 1st preceding yr. | 2nd preceding yr. | 3rd preceding yr. | 4th preceding yr. | 5th preceding yr. |
|---|---|---|---|---|---|
| a Gross receipts from farming . . . | Not applicable | | | | |
| b Inventory: Crops, etc. . . . . | | | | | |
| Livestock held for sale: | | | | | |
| Purchased . . . . . | | | | | |
| Raised . . . . . | | | | | |
| Livestock held for draft breeding, sport, or dairy purposes: | | | | | |
| Purchased . . . . . | | | | | |
| Raised . . . . . | | | | | |
| Total inventory . . . . . | | | | | |

6 Method used to value inventory *(check appropriate box)*:

☐ Cost ☐ Cost or market, whichever is lower ☐ Farm price ☐ Unit livestock price ☐ Other (explain on separate page)

## Section C. Change in Method of Valuing Inventories. *(See Specific Instructions for Section C.)*

**Note:** *Also complete Section D.* Not applicable

1 Description of inventory goods being changed ▶

2 Description of inventory (if any) not being changed ▶

3 Present method of identifying costs in inventory: ☐ Specific identification ☐ FIFO ☐ LIFO

If "LIFO," attach copy of Form 970 adopting that method and copies of any Forms 970 filed to extend the use of the method.

4 Present method used to value inventory: ☐ Cost ☐ Cost or market, whichever is lower ☐ Retail cost ☐ Retail, lower of cost or market ☐ Other (attach explanation)

5 Show method and value of the inventories being changed at the end of the tax year preceding the year of change under:

a Present method ▶ $

b Proposed method ▶ $

c If changing to cost method, are you going to elect LIFO for identifying costs? . . . . . ☐ Yes ☐ No

6 Attach the computation used to arrive at the section 481 adjustment.

FILED UNDER REV. PROC. 87-51

(58)

Form 3115 (Rev. 11-87) Pennsylvania Blue Shield, 12-31-87, #23-1294723 Page 4

**Section D. Method of Cost Allocation**

Complete this section if the requested change involves either property produced, property acquired for resale, or long-term contracts. Please check (✓) the appropriate boxes in Parts I and II showing which costs are included, under both the present and proposed methods, in the cost of the property produced or acquired for resale under section 263A and allocated to long-term contracts under section 460. If any boxes are not checked, it is assumed that these costs are excluded. Please mark "N/A" in boxes for costs that do not apply to the taxpayer. If you are presently including only a portion of a type of cost, enter "P" in the appropriate box instead of (✓).

**Part I Direct and Indirect Costs** (Required to be allocated)

| | | Federal income tax purposes: Present method Included (✓) | Federal income tax purposes: Proposed method Included (✓) |
|---|---|---|---|
| 1 | Direct material | Not applicable | |
| 2 | Direct labor | | |
| 3 | Repairs that relate to a production, resale, or long-term contract activity | | |
| 4 | Maintenance | | |
| 5 | Utilities | | |
| 6 | Rent | | |
| 7 | Indirect labor and production supervisory wages | | |
| 8 | Indirect materials and supplies | | |
| 9 | Tools and equipment | | |
| 10 | Quality control and inspection | | |
| 11 | Taxes other than state, local, and foreign income taxes | | |
| 12 | Depreciation, amortization, and cost recovery allowance for equipment and facilities placed in service and not temporarily idle | | |
| 13 | Depletion | | |
| 14 | Administrative costs (but not including any costs of selling or any return on capital) | | |
| 15 | Direct or indirect costs of other administrative, service, or support function or department | | |
| 16 | Officers' compensation (not including selling activities) | | |
| 17 | Insurance | | |
| 18 | Employee benefits | | |
| 19 | Research and experimental expenses attributable to long-term contracts | | |
| 20 | Rework labor, scrap, and spoilage | | |
| 21 | Bidding expenses incurred in the solicitation of particular contracts ultimately awarded to the taxpayer | | |
| 22 | Engineering and design costs (not including section 174 research and experimental expenses) | | |
| 23 | Storage and warehousing costs including a portion of allocable general and administrative costs** | | |
| 24 | Purchasing costs including a portion of allocable general and administrative costs | | |
| 25 | Handling, processing, assembly, and repackaging costs including a portion of allocable general and administrative costs | | |
| 26 | Interest | | |
| 27 | Other costs (Attach a list of such costs.) | | |

** Resalers may distinguish between off-site and on-site storage, and are not required to capitalize on-site storage costs. Check this box if you are a resaler allocating only off-site storage costs . ▶ ☐

**Part II Other Costs** (Not required to be allocated)

| | | Present method | Proposed method |
|---|---|---|---|
| 1 | Repairs that do not relate to a production, resale, or long-term contract activity | Not applicable | |
| 2 | Research and experimental expenses not included on line 19, Part I | | |
| 3 | Bidding expenses not included on line 21, Part I | | |
| 4 | Marketing, selling, advertising, and distribution expenses | | |
| 5 | General and administrative costs attributable to the performance of services that do not directly benefit or are not incurred by reason of a particular production, resale, or long-term contract activity | | |
| 6 | Income taxes | | |
| 7 | Past service costs of pension and annuity plans | | |
| 8 | Cost of strikes | | |
| 9 | Other costs (Attach a list of such costs.) | | |

**Part III Additional Information**

1 Method of allocating indirect costs: Not applicable
☐ Specific identification ☐ Standard cost method ☐ Burden rate (attach explanation) ☐ Other (attach explanation)

2 Method of allocating service costs: ☐ Direct ☐ Step allocation
☐ Other (explain) ........

3 Taxpayers subject to the requirements of section 263A, please check the appropriate box(es) to indicate the simplified method(s), if any, presently used: ☐ Simplified resale method ☐ Simplified production method ☐ Simplified service cost method

(59)

Filed Under Rev. Proc. 87-51

Form 3115 (Rev. 11-87) Pennsylvania Blue Shield, 12-31-87 #23-1294723 Page 5

## Section E. Change in Method of Reporting Income From Long-Term Contracts

**Note:** *Also complete section D.* Not applicable

1 Are your contracts long-term contracts as defined in section 460? ☐ Yes ☐ No
2 Does the change involve any pre-March 1, 1986 contracts? ☐ Yes ☐ No
3 Will the taxpayer elect the simplified cost-to-cost method for determining the degree of contract completion? ☐ Yes ☐ No
4 Is the same method used for reporting all long-term contracts regardless of duration? ☐ Yes ☐ No
If "No," explain.
5 Do any of your contracts qualify for the small construction contract exception under section 460(e)? ☐ Yes ☐ No
If "Yes," please provide a separate cost allocation worksheet (Section D) for such contracts.
6 Is the change in method requested for all contracts outstanding at the beginning of the tax year of change? ☐ Yes ☐ No
If "No," explain.
7 Do you have either cost-plus long-term contracts or Federal long-term contracts? ☐ Yes ☐ No
If "Yes," please provide the information in items 2 through 6 above and complete the chart in Section D separately for such contracts.
8 Net adjustment required under section 481(a) $

## Section F. Change in Method of Reporting Interest (Discount) on Installment and Other Loans

1 Change with respect to interest on ☐ Installment loans, ☐ Commercial loans, and ☐ Other loans (explain) ▶
Not applicable
2 Do any of these loans cover a period in excess of 60 months? ☐ Yes ☐ No
If "Yes," please attach an explanation. (See Rev. Rul. 83-84 and Rev. Proc. 83-40.)
If you wish to change from the sum of the months digits method (rule of 78's) to the economic accrual of interest method for reporting interest (discount) under Rev. Rul. 83-84, see Rev. Procs. 84-27, 84-28, 84-29, and 84-30.
3 Amount of earned or realized interest that has not been reported on your return as of the end of the tax year preceding the year of change. $
4 Amount of unearned or unrealized interest that has been reported on your return as of the end of the tax year preceding the year of change. $
5 Method of rebating in event of prepayment of loans ▶

## Section G. Change in Method of Accounting for Depreciation Under Section 167

Applicants desiring to change their method of accounting for depreciation under section 167 must complete this section. This information must be supplied for each account for which a change is requested. **Note:** *Certain changes in methods of accounting for depreciation may be filed with the Service Center where your return will be filed. See Rev. Proc. 74-11 for the methods covered.*

1 Date of acquisition ▶ See Section H
2a Are you the original owner or the first user of the property? ☐ Yes ☐ No
b If residential property, did you live in the home before renting it? ☐ Yes ☐ No
3 Is depreciation claimed under Regulations section 1.167(a)-11 (CLADR)? ☐ Yes ☐ No
If "Yes," the only changes permitted are under Regulations section 1.167(a)-11(c)(1)(iii). Identify these changes on the tax return for the year of change.
4 Is the property public utility property? ☐ Yes ☐ No
5 Location of the property (city and state) ▶
6 Type or character of the property ▶
7 Cost or other basis of the property and adjustments thereto (exclude land) $
8 Depreciation claimed in prior tax years (depreciation reserve) $
9 Estimated salvage value $
10 Estimated remaining useful life of the property ▶
11 If the declining balance method is requested, show percentage of straight-line rate ▶
12 Other information, if any ▶

PBS-002321

(60)



Form 3115 (Rev. 11-87) Pennsylvania Blue Shield, 12-31-87, #23-1294723

## Section H. Change in Method of Accounting Not Listed Above *(See Specific Instructions for Section H.)*

SEE APPENDIX II

## Signature—All Filers *(See instructions.)*

Under penalties of perjury, I declare that I have examined this application, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than applicant) is based on all information of which preparer has any knowledge.

| | | |
|---|---|---|
| Pennsylvania Blue Shield | Senior V.P. Finance and Legal | |
| Applicant's name | Signature and title | Date |
| Robert E. Patterson | R. E. Patterson | 9-12-88 |
| Signing official's name (Please print or type.) | Signature and title of officer of the parent corporation, if applicable | Date |
| | Anthony J. Notarfrancesco | 9/15/88 |
| | Signature of individual or firm preparing the application | Date |

PBS-002322

PENNSYLVANIA BLUE SHIELD
12-31-87, #23-1294723

Application for Change in Accounting Method
Filed Under Revenue Procedure 87-51

Appendix I to Form 3115
Page 1 of 1

Taxpayer is a Blue Shield organization to which section 833 of the Internal Revenue Code of 1986 applies. Under special transition rules enacted by Congress no adjustment under section 481 (or any other provision) of the Code is to be made on account of a change in the taxpayer's method of accounting for 1987, its first taxable year beginning after December 31, 1986. Tax Reform Act of 1986, Pub. L. No. 99-514, Section 1012 (c)(3)(A)(i), 100 Stat. 2085, 2393 (1986).

PENNSYLVANIA BLUE SHIELD
12-31-87, #23-1294723

Application for Change in Accounting Method
Filed Under Revenue Procedure 87-51

Appendix II to Form 3115
Page 1 of 3

Section H, Page 6

Prior to 1987, Pennsylvania Blue Shield was tax-exempt under Section 501 (c)(4) of the Internal Revenue Code of 1954 as an organization not organized for profit and operated exclusively for the promotion of social welfare. The Tax Reform Act of 1986 changed the tax treatments of all Blue Cross and Blue Shield organizations (Plans). Tax Reform Act of 1986, Pub. L. No. 99-514, Section 1012, 100 Stat. 2085, 2390 (1986). For tax years beginning after 1986, the Plan is taxable in the same manner as if it were a stock property and casualty insurance company. See Sections 501(m) and 833(a)(1) of the Internal Revenue Code of 1986.

The starting point for the computation of the taxable income for a property and casualty insurance company is the annual statement (section 832(b)(1)). Annual statement amounts are then modified in several respects to arrive at taxable income.

Recognizing that Plans may have existing methods of accounting that do not conform to the proper tax accounting required of property and casualty insurance companies, the legislative history of Section 1012 of the Tax Reform Act of 1986 reflects specific provisions implementing the Congressional intent that Plans be permitted to change accounting methods as they make the transition from tax-exempt organizations. Conference Report Language states:

> In addition to this special deduction (section 833(a)(2) deduction), such organizations are given a fresh start with respect to changes in accounting methods resulting from the change from tax-exempt to taxable status. No adjustment is made under Section 481 on account of an accounting method change.

H. R. Conf. Rep. No 841, 99th Cong., 2d Sess. II-349 (1986).

The statute implementing the legislative history also recognizes the need for Plans to change methods of accounting. Legislative Language states:

> ... No adjustment shall be made under Section 481 (or any other provisions) of such Code on account of a change in its method of accounting for its first taxable year beginning after December 31, 1986...

See Section 1012(c)(3)(A)(i) of the Tax Reform Act of 1986.

PBS-002324

(63)

Appendix II to Form 3115
Page 2 of 3

This application for change in accounting method is being filed under the rules of Revenue Procedure 87-51, which permits an existing Blue Shield or Blue Cross organization to file the request for change by the date it files its tax return for the year of change. Revenue Procedure 87-51 exempts the applicant from the calculation of any section 481(a) adjustments. The Revenue Procedure requires the applicant to describe the accounting methods to which it is changing. The applicant is not required to describe the accounting method from which it is changing. No user fee is required (see Appendix III).

The taxpayer requests permission to change and to use methods of accounting that are in a compliance with the Congressional requirement that the taxpayer be taxed as a stock property and casualty insurance company. The methods of accounting which the taxpayer will use to comply with this requirement include:

1. Dividend income will be reported as dividend payments are received.

2. Pursuant to the regulations under Internal Revenue Code Section 168, the taxpayer will, for tax purposes, treat all assets owned prior to January 1, 1987 as if they were placed in service on January 1, 1987. Depreciation expense will be properly computed using methods prescribed in the Internal Revenue Code of 1986. The basis for depreciation will be the lower of cost net of depreciation taken through December 31, 1986 for financial statement purposes or fair market value at December 31, 1986. For purposes of determining gain or loss, the adjustment basis of any asset held on January 1, 1987 will be its fair market value as of December 31, 1986 less subsequent depreciation taken.

3. Purchased computer software costs will be capitalized and amortized over a period of five years or less, in accordance with rules applicable under the Internal Revenue Code of 1986.

4. All costs properly attributable to the development of computer software will be treated as a current expense in accordance with the rules under the Internal Revenue Code of 1986.

5. Deferred compensation expense under a nonqualified plan for certain employees will be reported according to rules perscribed in the Internal Revenue Code of 1986.

6. Miscellaneous unsolicited cash receipts will be recognized as income of the taxpayer in the year received.

7. Income from subsidiaries will be recognized as dividends are received.

8. Pension expense will be recognized as cash contributions to the pension fund are made, under the rules perscribed in the Internal Revenue Code of 1986.

9. The cost basis for investment securities will be determined using acceptable methods perscribed in the Internal Revenue Code of 1986.