IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1030 T
(JUDGE MARGOLIS)

HIGHMARK, INC., SUCCESSOR IN INTEREST TO
PENNSYLVANIA BLUE SHIELD AND SUBSIDIARIES,
Plaintiff,
v.

THE UNITED STATES,
Defendant.

UNITED STATES' PROPOSED FINDINGS OF UNCONTROVERTED FACT
TO ACCOMPANY UNITED STATES' MOTION FOR SUMMARY JUDGMENT

In support of its motion for summary judgment, the United States relies on the following proposed findings of uncontroverted fact:

1. At all times relevant to this case, plaintiff was a Pennsylvania non-profit corporation doing business as an independent licensee of the Blue Cross and Blue Shield Association. Compl. ¶¶ 3, 15.

2. As a provider of health insurance, plaintiff is party to healthcare coverage contracts with individual and group subscribers. Compl. ¶ 22.

3. Plaintiff's healthcare coverage contracts obligate plaintiff to pay the healthcare costs of the individual or group members in exchange for the subscriber's payment of an insurance premium. Compl. ¶ 22.

4. In the ordinary course of its business, plaintiff incurs various expenses – such as, advertising, salaries, actuarial fees to compute premiums, and overhead – to induce

potential customers to enter into contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 2-10 (Def. Ex. 1, App. B at B-6 - B-8); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories Nos. 18, 21 (Def. Ex. 2, App. B at B-47 - B-48, B-50 - B-51); Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 3, App. B at B-67); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 4, App. B at B-80); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 5, App. B at B-92).

5. Over the life of each contract, plaintiff incurs additional expenses to keep the policy in place. Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 3, App. B at B-67); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 4, App. B at B-80); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 5, App. B at B-92).

6. For purposes of its financial accounting (both as a tax-exempt entity and as a taxable entity), plaintiff treats the expenses referred to in Defendant's Proposed Findings of Fact Nos. 4 and 5 as current expenses (not capital items). Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 23 (Def. Ex. 1, App. B at B-6, B-12); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

7. For purposes of its tax accounting after 1986, plaintiff treated the expenses referred to in Defendant's Proposed Findings of Fact Nos. 4 and 5 as ordinary expenses (*i.e.*, both the post-1986 expenditures incurred to maintain its pre-1987 contracts, and its post-1986 expenditures incurred to solicit and maintain its post-1986 contracts). Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 21-22

(Def. Ex. 1, App. B at B-6, B-11); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

8. On plaintiff's income tax returns for the years 1987 through 1994, as originally filed, plaintiff claimed no loss deductions for terminated contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 26 (Def. Ex. 1, App. B at B-12).

9. Plaintiff first claimed loss deductions for terminated contracts in September 1995 on its amended return for 1991. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 27 (Def. Ex. 1, App. B at B-12); Compl. ¶ 36(b).

10. After filing its amended return for 1991, plaintiff filed an amended return for 1992, and informal refund claims for 1993 and 1994, seeking deductions for terminated healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 27 (Def. Ex. 1, App. B at B-12); Compl. ¶¶ 41(b), 46(b), 51(b).

11. After filing its amended return for 1991, plaintiff claimed deductions for terminated contracts on its original 1995 return. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 28 (Def. Ex. 1, App. B at B-12); Compl. ¶¶ 54, 56(a).

12. At no time between the filing of its original returns for 1987 through 1994 and the filing of its amended 1991 and 1992 returns did plaintiff request or secure the consent of the Internal Revenue Service (the "IRS") to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Second

Amended Response to Defendant's First Set of Requests for Admission No. 29 (Def. Ex. 1, App. B at B-12 - B-13).

13. At no time between the filing of its original returns for 1987 through 1994 and the filing of its refund claims for 1993 and 1994, did plaintiff request or secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 29 (Def. Ex. 1, App. B at B-12 - B-13).

14. At no time between the filing of its original returns for 1987 through 1994 and the filing of its original 1995 return, did plaintiff request or secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 30 (Def. Ex. 1, App. B at B-13).

15. The valuation report written by PricewaterhouseCoopers and submitted to the IRS by plaintiff claims that the fair market value of plaintiff's healthcare coverage contracts as of January 1, 1987, was over $303 million. Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-128).

16. Plaintiff's average taxable income during the period 1991 through 1995 was $88 million per year. Certified Transcript of Account for Highmark, Inc., for 1991 through 1995 (Def. Ex. 6, App. B at B-95, B-99, B-104, B-108, B-113).

17. According to the valuation report prepared by PricewaterhouseCoopers and submitted to the IRS by plaintiff, at least some of the contracts held by plaintiff in 1987 are likely to

last beyond the year 2025. Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-141- B-142).

18. Plaintiff plans to continue claiming § 165(a) deductions in the years that the remaining contracts that existed on January 1, 1987, terminate. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 33 (Def. Ex. 1, App. B at B-14).

19. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's payment patterns. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

20. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's claims experience. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

21. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's level of satisfaction with plaintiff's services. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

22. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the existence and terms of any proposals for coverage that the subscriber had received from other health insurers.

Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

23. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's net annual income. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

24. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' gender. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

25. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' history of health problems before January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

26. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' occupation. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

27. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' income level. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

28. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' education level. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

29. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' marital status. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

30. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the claims experience of each participant of each contract. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

31. The PricewaterhouseCoopers report submitted by plaintiff to the IRS did not analyze more than a few of the unique characteristics of each contract to determine its fair market value as of January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 37-38 (Def. Ex. 1, App. B at B-16 - B-17); Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-126 - B-128).

32. The PricewaterhouseCoopers report submitted by plaintiff to the IRS gathered and averaged data from all or broad categories of the contracts to determine each contract's fair market value as of January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 37-38 (Def. Ex. 1, App. B at B-

16 - B-17); Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-126 - B-128).

33. In the years 1987 through 1995, plaintiff incurred substantial costs in creating, or facilitating the creation of, healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 2 (Def. Ex. 1, App. B at B-6).

34. The costs plaintiff incurred in the years 1987 through 1995 in creating, or facilitating the creation of, healthcare coverage contracts included advertising, salaries (and related expenses), travel, equipment, supplies, printing, stationery, postage, and telephone. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 2-3, 5-10 (Def. Ex. 1, App. B at B-6 - B-8); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories Nos. 21-22 (Def. Ex. 2, App. B at B-50 - B-52); *see, e.g.*, Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 3, App. B at B-67); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 4, App. B at B-80); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 5, App. B at B-92).

35. For purposes of its financial accounting records, plaintiff never capitalized the costs of creating, or facilitating the creation of, healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 23 (Def. Ex. 1, App. B at B-6, B-12); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

36. Consistent with professional financial accounting standards and applicable insurance regulations, plaintiff has always written off the costs of creating, or facilitating the

creation of, healthcare coverage contracts in the year in which they were incurred. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 23-25 (Def. Ex. 1, App. B at B-6, B-12).

37. In each of the years 1987 through 1995, plaintiff deducted the costs of creating, or facilitating the creation of, healthcare coverage contracts in determining its tax liability. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 21-22 (Def. Ex. 1, App. B at B-6, B-11); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

38. Plaintiff contends that for each of the 1987 through 1995 tax years, it is entitled to deduct the current costs it incurred in that year in creating contracts, as well as the losses it sustained upon the termination of contracts created before January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 31 (Def. Ex. 1, App. B at B-14).

39. Plaintiff has never purchased healthcare coverage contracts. Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

40. Plaintiff has never capitalized the costs associated with creating healthcare coverage contracts. Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 1 (Def. Ex. 2, App. B at B-36).

Respectfully submitted,

s/ Karen Servidea
Karen Servidea
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 616-3423*
*Fax: (202) 514-9440*
*Email: karen.e.servidea@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
W.C. RAPP
*Senior Trial Attorney*

February 15, 2007
Date

s/ W.C. Rapp
Of Counsel