# Plaintiff's Exhibit 2

2006
The Year in Review

# Continuing Developments in the Taxation of Insurance Companies*



*connectedthinking

PRICEWATERHOUSECOOPERS

# Continuing Developments in the Taxation of Insurance Companies

# 2006

## The Year in Review

# Contents


01 The Year in Review [illegible]

02 Legislation 20

03 Reserves [illegible]

04 Captives [illegible]

05 Tax Shelters [illegible]

06 Reorganizations 56

07 International 69

08 Blue Cross Blue Shield 89

09 Products 98

10 Other 113

11 Multistate 128

12 Tax Accounting 140

13 Appendixes

Appendix A 154

Appendix B 164

accounting described in Rev. Proc. 2002-46 does not override Sections 404(a)(5) and (d). Accordingly, the IRS denied Taxpayer's request for relief under Section 7805(b).

Ranks Of Uninsured Americans Grow[101]




# Intangible Asset Abandonment Losses

The LMSB Division of the IRS evaluated the Intangible Asset Abandonment Loss Issue as claimed by many Blue Cross Blue Shield entities in calendar year 1987 and subsequent tax periods, and in May 2006, made a settlement offer to many Blue Cross Blue Shield organizations.[102] Most plans have accepted the offer and have begun revising settlement calculations accordingly in hopes of reaching ultimate resolution with the receipt of the IRS' signed closing agreement.

## LMSB Settlement Offer

The IRS promised to resolve the issue on the following terms:

1. The government agrees that a loss deduction is allowable upon termination of an individual subscriber or provider contract with respect to which the taxpayer claims an adjusted basis derived from Section 1012(c)(3)(A)(ii) of the Tax Reform Act of 1986.

101 Appleby, Julie. "Ranks of Uninsured Americans Grow," USA Today, August 29, 2006.

102 Internal Revenue Service, LMSB Division, "Intangible Asset Abandonment Losses" Settlement Offer, May 12, 2006.

2. The Taxpayer will concede that no deduction is allowed for the termination of employment contracts or workforce in place intangibles.
3. If the appraised value of the subscriber intangible asset is not more than 20 percent of the December 31, 1986 net subscriber premiums, the government will allow 80 percent of the appraised value of the subscriber intangible asset. If the appraised value of the subscriber intangible asset is more than 20 percent of the December 31, 1986 net subscriber premiums, the government will adjust the appraised value down to 20 percent of the December 31, 1986 net subscriber premiums, then allow 80 percent of the new value, effectively allowing 16 percent of the December 31, 1986 net subscriber premiums. For purposes of this offer, appraised values shall be the value determined in the most recent appraisal used by the Taxpayer in claiming loss deductions for years through 2004.
4. If the appraised value of the provider intangible asset is not more than 2 percent of the December 31, 1986 net subscriber premiums, the government will allow 50 percent of the appraised value of the provider intangible asset, If the appraised value of the provider intangible asset is more than 2 percent of the December 31, 1986 net subscriber premiums, the government will adjust the appraised value down to 2 percent of the December 31, 1986 net subscriber premiums, then allow 50 percent of the new value, effectively allowing 1 percent of the December 31,1986 net subscriber premiums. For purposes of this offer, appraised values shall be the value determined in the most recent appraisal used by the Taxpayer in claiming loss deductions for years through 2004.
5. The government will accept the timing of the loss deductions claimed for years through 2004.
6. The remaining adjusted basis of subscriber and provider intangible assets as of January 1, 2005 will be computed on an allowed or allowable basis and included in a Closing Agreement (Form 906). For years after 2004, the Taxpayer must establish the timing of any deduction claimed and the amount of the remaining adjusted basis allocable to each contract for which a deduction is claimed.

7. For each year at issue, Taxpayer must establish that it is an organization entitled to use the adjusted basis provided in Section 1012(¢)(3)(A)(1l) of the Tax Reform Act of 1986.

The Taxpayer must provide the following information in order to enter into this settlement:

a. The December 31, 1986 net subscriber premiums.

b. The appraisal used to claim the loss for the years 1987 through 2004.

c. The amount of the loss deducted or claimed for each year from 1987 through 2004.

d. The status of each of those years (i.e., in LMSB, in Appeals, docketed, closed, claim disallowed, claim partially allowed, claim allowed, etc.).

In addition, if the IRS requests supplemental information or documents necessary to effect a settlement, the Taxpayer must agree to provide those documents within 20 calendar days of the request. The Internal Revenue Service will grant extensions only in exceptional circumstances and subject to its sole discretion.

The agreement is favorable, but fails to address some of the difficulties Plans are encountering in applying the agreement, including:

1. Incorporating the intangibles abandonment deductions into the calculations of Adjusted Surplus pursuant to Section 833(a)(2)

2. Determining the amount of documentation required by IRS agents in supporting the valuation of the intangibles abandonment deductions

3. Applying the premium cap provisions to the intangibles—on an individual asset basis, a line of business basis or in the aggregate.