# Plaintiff's Exhibit 3

**Internal Revenue Service**
LMSB Division

**Department of the Treasury**

Date: May 12, 2006

**Person to Contact:**
Kenneth W. Black
**Telephone Number:**
904-665-0954
**Refer Reply to:**
AP:ATCL: JAX:KWB
**In Re:**
Intangible Asset Abandonment Losses

Dear Mr.

This letter is to inform you that Appeals has evaluated the Intangible Asset Abandonment Loss Issue as claimed by many Blue Cross Blue Shield entities in calendar year 1987 and subsequent tax periods.

Under Delegation Order 4-25, the Service proposes to resolve this tax issue as described below. This offer must be accepted within 30 days from the date of this letter. This offer may not be available for any case currently under the jurisdiction of a federal court or those previously litigated.

This resolution reflects the Appeals assessment of the hazards of litigation. Appeals has concluded that the settlement proposed in this letter is an equitable resolution of the typical case. Absent atypical facts and circumstances, the Taxpayer should not expect a resolution of the tax issue on terms that are more favorable than the terms offered in this letter. If you do not accept this offer, the resolution of your case in Appeals will be based on the merits of the issue presented and may be less favorable than the terms of this letter.

If you accept this offer, the Service will resolve the issue on the following terms:

1. The Government agrees that a loss deduction is allowable upon termination of an individual subscriber or provider contract with respect to which the taxpayer claims an adjusted basis derived from §1012(c)(3)(A)(ii) of the Tax Reform Act of 1986.
2. The Taxpayer will concede that no deduction is allowed for the termination of employment contracts or workforce in place intangibles.
3. If the appraised value of the subscriber intangible asset is not more than 20 percent of the 12/31/1986 net subscriber premiums, the Government will allow 80 percent of the appraised value of the subscriber intangible asset. If the appraised value of the subscriber intangible asset is more than 20 percent of the 12/31/1986 net subscriber premiums, the Government will adjust the appraised value down to 20 percent of the 12/31/1986 net subscriber premiums, then allow 80 percent of the new

value, effectively allowing 16 percent of the 12/31/1986 net subscriber premiums. For purposes of this offer, appraised values shall be the value determined in the most-recent appraisal used by the Taxpayer in claiming loss deductions for years through 2004.

4. If the appraised value of the provider intangible asset is not more than 2 percent of the 12/31/1986 net subscriber premiums, the Government will allow 50 percent of the appraised value of the provider intangible asset. If the appraised value of the provider intangible asset is more than 2 percent of the 12/31/1986 net subscriber premiums, the Government will adjust the appraised value down to 2 percent of the 12/31/1986 net subscriber premiums, then allow 50 percent of the new value, effectively allowing 1 percent of the 12/31/1986 net subscriber premiums. For purposes of this offer, appraised values shall be the value determined in the most-recent appraisal used by the Taxpayer in claiming loss deductions for years through 2004.
5. The Government will accept the timing of the loss deductions claimed for years through 2004.
6. The remaining adjusted basis of subscriber and provider intangible assets as of 1/1/2005 will be computed on an allowed or allowable basis and included in a Closing Agreement (Form 906). For years after 2004, the Taxpayer must establish the timing of any deduction claimed and the amount of the remaining adjusted basis allocable to each contract for which a deduction is claimed.
7. For each year at issue, Taxpayer must establish that it is an organization entitled to use the adjusted basis provided in §1012(c)(3)(A)(ii) of the Tax Reform Act of 1986.

The Taxpayer must provide the following information in order to enter into this settlement:

a. The 12/31/1986 net subscriber premiums.
b. The appraisal used to claim the loss for the years 1987 through 2004.
c. The amount of the loss deducted or claimed for each year from 1987 through 2004.
d. The status of each of those years, (i.e. in LMSB, in Appeals, docketed, closed, claim disallowed, claim partially allowed, claim allowed, etc.)

In addition, if the Service requests supplemental information or documents necessary to effect a settlement, the Taxpayer must agree to provide those documents within 20 calendar days of the request. The Internal Revenue Service will grant extensions only in exceptional circumstances and subject to its sole discretion.

This is a binding settlement only if the Taxpayer signs the specific matters closing agreement, Form 906, and returns them to us and we sign on behalf of the Commissioner of Internal Revenue.

If applicable, a proposed settlement will be reported to the Joint Committee on Taxation in accordance with section 6402 of the Internal Revenue Code.

If you choose not to accept the proposed settlement, development of the issue will continue where warranted. If the issue is still in dispute at completion of Compliance's review, you may request an Appeals conference through the usual Appeals process.

This settlement is solely a settlement of civil tax matters among the parties, and represents a compromise of issues based on, among other things, efficient tax administration. No statement contained herein shall be deemed to be an admission by the IRS or the Commissioner, and nothing herein shall preclude the IRS from asserting a position on the merits that is different from this settlement in contexts other than those concerning the civil tax liability of the parties.

If you have any questions, please contact the individual whose name and telephone number appear at the top of this letter.

Sincerely,

Kenneth W. Black
Appeals Team Case Leader

Attachment- Offer Acceptance Form

cc. Mr. Frederick Robinson

ATTACHMENT

Blue Cross Blue Shield Industry

INTANGIBLE ASSET ABANDONMENT LOSS ISSUE

I hereby agree to settle the following issues under the terms set forth in this letter.

Taxpayer's Name:______________________________

TIN: ____________________

Issue: Intangible Asset Abandonment Loss

<u>Years at Issue</u> <u>Deduction in Dispute</u>

Signature:____________________________

Name: __________________________________

Title: ___________________________________

Date: ________________________

# Plaintiff's Exhibit 4

Form 906-C
(Rev. August 1994)

Department of the Treasury — Internal Revenue Service

# Closing Agreement on Final Determination Covering Specific Matters

Under section 7121 of the Internal Revenue Code

BCBS ENTITY [EIN 00-123456] 100 MAIN ST., ANYWHERE, FL 33333

(Taxpayer's name, address, and identifying number)

and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, the Tax Reform Act of 1986 ("the Act") revoked the tax-exempt status of Blue Cross Blue Shield organizations and added I.R.C. § 833, which treats those organizations as taxable stock insurance companies;

WHEREAS, section 1012(c)(3) of the Act provided "special rules for existing Blue Cross or Blue Shield organizations";

WHEREAS, under § 1012(c)(3)(A)(ii) of the Act, each organization's adjusted bases in its assets, for purposes of determining gain or loss, is deemed equal to the assets' fair market values as of the first day of its first taxable year beginning after December 31, 1986;

WHEREAS, Blue Cross Blue Shield organizations have claimed annual or periodic loss deductions under I.R.C. § 165 with respect to certain intangible assets, including subscriber, provider and employee contracts, using the fair market value basis provided under § 1012(c)(3)(A)(ii) of the Act;

WHEREAS, Taxpayer has claimed deductions for the loss of [subscriber], [provider], [and employee] contracts based upon an appraisal by [name of appraiser] dated [insert date] to determine fair market value;

WHEREAS, a dispute has arisen between the parties with respect to the fair market value of these intangible assets and the allowance of such losses;

NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes:

1. As of January 1, 1987 the fair market value of the subscriber contracts intangible asset is __________.

2. For taxable year beginning before December 31, 2004, the amount of the taxpayer's loss upon the termination of each individual subscriber contract as claimed and as corrected per this agreement are as follows:

| Taxable Year | Amount Claimed | Agreed Amount |
| --- | --- | --- |

3. Taxpayer's corrected adjusted basis in its subscriber contracts intangible asset at January 1, 2005, is ______.

4. For each taxable year after December 31, 2004, the Taxpayer must establish the date of termination of each subscriber contract and the allocable value determined based upon the adjusted basis amount of the remaining contracts shown in paragraph 3.

[# 5 - 8 if necessary]

5. As of January 1, 1987, the fair market value of the provider intangible asset is ________.

6. For the taxable years beginning before December 31, 2004, the amount of the Taxpayer's loss upon the termination of each individual provider contract as claimed and as corrected are as follows:

| Taxable Year | Amount Claimed | Agreed Amount |
| --- | --- | --- |

7. Taxpayer's corrected adjusted basis in its provider contracts intangible asset at January 1, 2005 is ________.

8. For each taxable year after December 31, 2004, the Taxpayer must establish the date of termination of each provider contract and the allocable value determined based upon the adjusted basis amount of the remaining contracts shown in paragraph 7.

9. The Taxpayer is not entitled to use the fair market value basis provided under §1012(c)(3)(A)(ii) of the Act to claim a loss upon the termination of individual employee contracts or other components of workforce in place.

10. Unless the Taxpayer establishes it is eligible to use the fair market basis provided under §1012(c)(3)(A)(ii) of the Act, the Taxpayer is not entitled to the deductions for the losses described in this agreement.

This agreement is final and conclusive except:

*(1)* the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

*(2)* it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code section 7122) notwithstanding any other law or rule of law; and

*(3)* if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

**By signing, the above parties certify that they have read and agreed to the terms of this document.**

Your signature ____________________ Date Signed ____________

Spouse's signature (if a joint return was filed) ____________________ Date Signed ____________

Taxpayer's representative ____________________ Date Signed ____________

Taxpayer (other than individual) ____________________

By ____________________ Date Signed ____________

Title ____________________

Commissioner of Internal Revenue

By ____________________ Date Signed ____________

Title ____________________

# Instructions

This agreement must be signed and filed in triplicate. (All copies must have original signatures.)

The original and copies of the agreement must be identical.

The name of the taxpayer must be stated accurately.

The agreement may relate to one or more years.

If an attorney or agent signs the agreement for the taxpayer, the power of attorney (or a copy) authorizing that person to sign must be attached to the agreement. If the agreement is made for a year when a joint income tax return was filed by a husband and wife, it should be signed by or for both spouses. One spouse may sign as agent for the other if the document (or a copy) specifically authorizing that spouse to sign is attached to the agreement.

If the fiduciary signs the agreement for a decedent or an estate, an attested copy of the letters testamentary or the court order authorizing the fiduciary to sign, and a certificate of recent date that the authority remains in full force and effect must be attached to the agreement. If a trustee signs, a certified copy of the trust instrument or a certified copy of extracts from that instrument must be attached showing:

*(1)* the date of the instrument;

*(2)* that it is or is not of record in any court;

*(3)* the names of the beneficiaries;

*(4)* the appointment of the trustee, the authority granted, and other information necessary to show that the authority extends to Federal tax matters; and

*(5)* that the trust has not been terminated, and that the trustee appointed is still acting. If a fiduciary is a party, Form 56, Notice Concerning Fiduciary Relationship, is ordinarily required.

If the taxpayer is a corporation, the agreement must be dated and signed with the name of the corporation, the signature and title of an authorized officer or officers, or the signature of an authorized attorney or agent. It is not necessary that a copy of an enabling corporate resolution be attached. See 26 C.F.R. §601.504(b)(2)(ii) as to dissolved corporations.

Use additional pages if necessary, and identify them as part of this agreement.

Please see Revenue Procedure 68-16, 1968-1 C.B. page 770, for a detailed description of practices and procedures applicable to most closing agreements.

| | | | |
|---|---|---|---|
| I have examined the specific matters involved and recommend the acceptance of the proposed agreement. | | I have reviewed the specific matters involved and recommend approval of the proposed agreement. | |
| (Receiving Officer) | (Date) | (Reviewing Officer) | (Date) |
| (Title) | | (Title) | |

# Plaintiff's Exhibit 5

PRICEWATERHOUSECOOPERS

PricewaterhouseCoopers LLP
350 South Grand Avenue
Los Angeles CA 90071-3405
Telephone (213) 356 6000
Facsimile (213) 356 6363

September 10, 1998

Mr. Robert C. Gray
Senior Vice President of Finance, Treasurer
Highmark, Inc.
120 Fifth Ave
Pittsburgh, PA 15222

Dear Mr. Gray:

In accordance with your request, PricewaterhouseCoopers LLP ("PricewaterhouseCoopers") has completed an analysis of the annual abandonment of intangible assets of Pennsylvania Blue Shield ("PBS," the "Company," or the "Plan"). The purpose of this study was to quantify the annual deductions for abandoned transition assets, subsequent to January 1, 1987 ("Valuation Date"), under Internal Revenue Code ("IRC") Section 165(a).

In our valuation report dated September 10, 1998, which is incorporated by reference herein, we determined the fair market value of certain intangible assets of PBS. Based on the analysis in our valuation report and the attached exhibits, the fair market values and the amounts available for abandonment of the subject assets are detailed below:

| | |
|---|---|
| Subscriber Relationships | $303,990,000 |
| Provider Contracts[1] | 1,972,000 |
| Assembled Employees[1] | 23,841,637 |
| Software | 31,053,932 |

For the purpose of determining the amount of abandonment deductions, we used termination of the relationship between PBS and the asset, whether it be a subscriber, provider or employee, as the criteria. Exhibit A.1 summarizes the annual abandonment deductions by asset category for the periods ending December 31, 1987 through 1997. Detailed Exhibits by asset category (Exhibits B.1 through E.1) support the summary schedule (Exhibit A.1) for the annual abandonment deductions. Appendices A through C contain detailed abandonments by account for Group Remittance, Direct Pay, and Corporate Experience Rated.

The findings stated in this letter, as well as the attached analyses and our valuation report relating to the determination of fair market value of certain intangible assets of PBS, are based on data obtained directly from the management of the Company and from sources of publicly available

[1] Appraised independently by Ernst & Young LLP.

REDACTED

PBS-000990

information. We have not attempted to verify the information received from such sources, and therefore, cannot assume responsibility for its accuracy.

Distribution of our estimates of the abandonment deductions and this letter, which is to be distributed only in its entirety, is intended for and restricted to the management of PBS. Our findings and report are not to be used with, circulated, quoted or otherwise referred to, in whole or in part for any other purpose without our express written consent.

We appreciate this opportunity to have been of service to you. If you have any questions regarding the content of this letter, please contact Michael Wierwille, Valuation Partner at (213) 356-6172.

Very truly yours,

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 2nd day of April, 2007, been made on the Defendant's attorney electronically, and by mailing a copy thereof to the following address:

Karen E. Servidea, Esquire
U.S. Department of Justice
Tax Division Court of Federal Claims Section, JCB/8804
555 4th Street, N.W.
Washington, D.C. 20001

David N. Sontag