**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HIGHMARK, INC., SUCCESSOR IN INTEREST TO PENNSYLVANIA BLUE SHIELD AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Civil Action No. 05-1030 T<br>Judge Margolis |

**THE PLAINTIFF'S RESPONSE TO THE DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT ACCOMPANYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. At all times relevant to this case, plaintiff was a Pennsylvania non-profit corporation doing business as an independent licensee of the Blue Cross and Blue Shield Association. Compl. ¶¶ 3, 15.

**Response: Agree.**

2. As a provider of health insurance, plaintiff is party to healthcare coverage contracts with individual and group subscribers. Compl. ¶ 22.

**Response: Agree.**

3. Plaintiff's healthcare coverage contracts obligate plaintiff to pay the healthcare costs of the individual or group members in exchange for the subscriber's payment of an insurance premium. Compl. ¶ 22.

**Response: Agree.**

4. In the ordinary course of its business, plaintiff incurs various expenses – such as, advertising, salaries, actuarial fees to compute premiums, and overhead – to induce potential customers to enter into contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 2-10 (Def. Ex. 1, App. B at B-6-B-8); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories Nos. 18, 21 (Def. Ex. 2, App. B at B-47 - B-48, B-50 - B-51); Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 3, App. B at B-67); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 4, App. B at B-80); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 5, App. B at B-92).

**Response: Agree.**

5. Over the life of each contract, plaintiff incurs additional expenses to keep the policy in place. Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 3, App. B at B-67); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 4, App. B at B-80); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 5, App. B at B-92).

**Response: Agree.**

6. For purposes of its financial accounting (both as a tax-exempt entity and as a taxable entity), plaintiff treats the expenses referred to in Defendant's Proposed Findings of Fact Nos. 4 and 5 as current expenses (not capital items). Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 23 (Def. Ex. 1, App. B at B-6, B-12); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

**Response: Agree, to the best of Highmark's knowledge.**

7. For purposes of its tax accounting after 1986, plaintiff treated the expenses referred to in Defendant's Proposed Findings of Fact Nos. 4 and 5 as ordinary expenses (*i.e.*, both the post-1986 expenditures incurred to maintain its pre-1987 contracts, and its post-1986 expenditures incurred to solicit and maintain its post-1986 contracts). Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 21-22 (Def. Ex. 1, App. B at B-6, B-11); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

**Response: Agree, to the best of Highmark's knowledge.**

8. On plaintiff's income tax returns for the years 1987 through 1994, as originally filed, plaintiff claimed no loss deductions for terminated contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 26 (Def. Ex. 1, App. B at B-12).

**Response: Agree.**

9. Plaintiff first claimed loss deductions for terminated contracts in September 1995 on its amended return for 1991. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 27 (Def. Ex. 1, App. B at B-12); Compl. ¶ 36(b).

**Response: Agree.**

10. After filing its amended return for 1991, plaintiff filed an amended return for 1992, and informal refund claims for 1993 and 1994, seeking deductions for terminated healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of requests for Admission No. 27 (Def. Ex. 1, App. B at B-12); Compl. ¶¶ 41(b), 46(b), 51(b).

**Response: Agree.**

11. After filing its amended return for 1991, plaintiff claimed deductions for terminated contracts on its original 1995 return. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 28 (Def. Ex., App. B at B-12); Compl. ¶¶ 54, 56(a).

**Response: Agree.**

12. At no time between the filing of its original returns for 1987 through 1994 and the filing of its amended 1991 and 1992 returns did plaintiff request or secure the consent of the Internal Revenue Service (the "IRS") to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Second Amended

Response to Defendant's First Set of Requests for Admission No. 29 (Def. Ex. 1, App. B at B-12 - B-13).

**Response: Disagree.** Highmark submitted with its 1987 tax return a Form 3115, Application for Change in Accounting Method, which stated: "For purposes of determining gain or loss, the adjust[ed] basis of any asset held on January 1, 1987 will be its fair market values as of December 31, 1986." (Def. Ex. 1, App. B at B-32; *see also id.* at B-24 through B-32).

**<u>Highmark's Proposed Revision:</u> After submitting its Application for Change in Accounting Method with its 1987 tax return (Def. Ex. 1, App. B at B-24 through B-32), Highmark did not submit any additional applications to change its accounting method relating to its termination or cancellation of healthcare coverage contracts.**

13. At no time between the filing of its original returns for 1987 through 1994 and the filing of its refund claims for 1993 and 1994, did plaintiff request or secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 29 (Def. Ex. 1, App. B at B-12 - B-13).

**Response: Disagree.** Highmark submitted with its 1987 tax return a Form 3115, Application for Change in Accounting Method, which stated: "For purposes of determining gain or loss, the adjust[ed] basis of any asset held on January 1, 1987 will be its fair market values as of December 31, 1986." (Def. Ex. 1, App. B at B-32; *see also id.* at B-24 through B-32).

<u>**Highmark's Proposed Revision:**</u> **See Highmark's Proposed Revision to Defendant's Finding of Fact #12.**

14. At no time between the filing of its original returns for 1987 through 1994 and the filing of its original 1995 return, did plaintiff request or secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 30 (Def. Ex. 1, App. B at B-13).

**Response: Disagree.** Highmark submitted with its 1987 tax return a Form 3115, Application for Change in Accounting Method, which stated: "For purposes of determining gain or loss, the adjust[ed] basis of any asset held on January 1, 1987 will be its fair market values as of December 31, 1986." (Def. Ex. 1, App. B at B-32; *see also id.* at B-24 through B-32).

<u>**Highmark's Proposed Revision:**</u> **See Highmark's Proposed Revision to Defendant's Finding of Fact #12.**

15. The valuation report written by PricewaterhouseCoopers and submitted to the IRS by plaintiff claims that the fair market value of plaintiff's healthcare coverage contracts as of January 1, 1987, was over $303 million. Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-128).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a

new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. The Deloitte Consulting Valuation Report will set forth the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions.

16. Plaintiff's average taxable income during the period 1991 through 1995 was $88 million per year. Certified Transcript of Account for Highmark, Inc., for 1991 through 1995 (Def. Ex. 6, App. B at B-95, B-99, B-104, B-108, B-113).

**Response: Agree.**

17. According to the valuation report prepared by PricewaterhouseCoopers and submitted to the IRS by plaintiff, at least some of the contracts held by plaintiff in 1987 are likely to last beyond the year 2025. Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-141 - B-142).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss

deductions, the Deloitte Consulting Valuation Report will take into account the expected duration of such contracts.

18. Plaintiff plans to continue claiming § 165(a) deductions in the years that the remaining contracts that existed on January 1, 1987, terminate. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 33 (Def. Ex. 1, App. B at B-14).

**Response: Agree.**

19. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's payment patterns. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

**Response: Agree.**

20. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's claims experience. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to

the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions, the Deloitte Consulting Valuation Report will take into account claims experience.

21. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's level of satisfaction with plaintiff's services. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

**Response: Agree.**

22. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the existence and terms of any proposals for coverage that the subscriber had received from other health insurers. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

**Response: Agree.**

23. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's net annual

income. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 37 (Def. Ex. 1, App. B at B-16 - B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions, the Deloitte Consulting Valuation Report will indirectly take into account subscriber's net annual income.

24. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' gender. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Agree.**

25. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' history of health problems before January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions, the Deloitte Consulting Valuation Report will indirectly take into account the contract participants' history of health problems before January 1, 1987.

26. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' occupation. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions, the Deloitte Consulting Valuation Report will indirectly take into account the contract participants' occupation.

27. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' income level. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions, the Deloitte Consulting Valuation Report will indirectly take into account the contract participants' income level.

28. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participants' education level. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Agree.**

29. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the contract participant's marital

status. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss deductions, the Deloitte Consulting Valuation Report will indirectly take into account the contract participant's marital status.

30. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the claims experience of each participant of each contract. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 38 (Def. Ex. 1, App. B at B-17).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that in its analysis of the fair market value as of January 1, 1987 of plaintiff's healthcare coverage contracts for which it claims section 165 loss

deductions, the Deloitte Consulting Valuation Report will take into account claims experience.

31. The PricewaterhouseCoopers report submitted by plaintiff to the IRS did not analyze more than a few of the unique characteristics of each contract to determine its fair market value as of January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 37-38 (def. Ex. 1, App. B at B-16 - B-17); Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-126 - B-128.)

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that the Deloitte Consulting Valuation Report will use contract-specific data to analyze the pertinent unique characteristics of each of plaintiff's healthcare coverage contracts in existence on January 1, 1987 and for which it claims section 165 loss deductions to determine each contract's fair market value as of January 1, 1987.

32. The PricewaterhouseCoopers report submitted by plaintiff to the IRS gathered and averaged data from all or broad categories of the contracts to determine each contract's fair market value as of January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 37-38 (Def. Ex. 1, App. B at

B-16 - B-17); Excerpt from PricewaterhouseCoopers Valuation Report (Def. Ex. 7, App. B at B-126 - B-128).

**Response: Disagree with the implication that Highmark bases its claim upon the PricewaterhouseCoopers valuation report; otherwise Agree.** Highmark will submit a new valuation report being prepared by Deloitte Consulting, which it will be produce to the defendant by May 21, 2007, pursuant to the Amended Scheduling Order dated March 14, 2007. Highmark expects that the Deloitte Consulting Valuation Report will employ contract-specific data for each of plaintiff's healthcare coverage contracts in existence on January 1, 1987 and for which Highmark claims section 165 loss deductions to determine each contract's fair market value as of January 1, 1987.

33. In the years 1987 through 1995, plaintiff incurred substantial costs in creating, or facilitating the creation of, healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 2 (Def. Ex. 1, App. B at B-6).

**Response: Agree.**

34. The costs plaintiff incurred in the years 1987 through 1995 in creating, or facilitating the creation of, healthcare coverage contracts included advertising, salaries (and related expenses), travel, equipment, supplies, printing, stationery, postage, and telephone. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 2-3, 5-10 (Def. Ex. 1, App. B at B-6 - B-8); Plaintiff's Second Amended

Answers to Defendant's First Set of Interrogatories Nos. 21-22 (Def. Ex. 2, App. B at B-50 - B-52); *see, e.g.,* Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 3, App. B at B-67); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 4, App. B at B-80); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 5, App. B at B-92).

**Response: Agree.**

35. For purposes of its financial accounting records, plaintiff never capitalized the costs of creating, or facilitating the creation of, healthcare coverage contracts. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 23 (Def. Ex. 1, App. B at B-6, B-12); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

**Response: Agree, to the best of Highmark's knowledge.**

36. Consistent with professional financial accounting standards and applicable insurance regulations, plaintiff has always written off the costs of creating, or facilitating the creation of, healthcare coverage contracts in the year in which they were incurred. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 23-25 (Def. Ex. 1, App. B at B-6, B-12).

**Response: Agree, to the best of Highmark's knowledge.**

37. In each of the years 1987 through 1995, plaintiff deducted the costs of creating, or facilitating the creation of, healthcare coverage contracts in determining its tax liability.

Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission Nos. 1, 21-22 (Def. Ex. 1, App. B at B-6, B-11); Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. Ex. 2, App. B at B-49 - B-50).

**Response: Agree, to the best of Highmark's knowledge.**

38. Plaintiff contends that for each of the 1987 through 1995 tax years, it is entitled to deduct the current costs it incurred in that year in creating contracts, as well as the losses it sustained upon the termination of contracts created before January 1, 1987. Plaintiff's Second Amended Response to Defendant's First Set of Requests for Admission No. 31 (Def. Ex. 1, App. B at B-14).

**Response: Agree.**

39. Plaintiff has never purchased healthcare coverage contracts. Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No. 20 (Def. ex. 2, App. B at B-49 - B-50).

**Response: Agree.**

40. Plaintiff has never capitalized the costs associated with creating healthcare coverage contracts. Plaintiff's Second Amended Answers to Defendant's First Set of Interrogatories No.1 (Def. Ex. 2, App. B at B-36).

**Response: Agree, to the best of Highmark's knowledge.**

Respectfully submitted,

/s/ Arthur Newbold
ARTHUR NEWBOLD
Attorney of Record
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone: (215) 994-2624
Fax: (215) 655-2624

Counsel for Plaintiff

Date: April 2, 2007

Of counsel:

Frederick J. Gerhart
James J. Spadaro, Jr.
David N. Sontag
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 2nd day of April, 2007, been made on the Defendant's attorney electronically, and by mailing a copy thereof to the following address:

Karen E. Servidea, Esquire
U.S. Department of Justice
Tax Division Court of Federal Claims Section, JCB/8804
555 4th Street, N.W.
Washington, D.C. 20001

David N. Sontag