IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HIGHMARK, INC., SUCCESSOR IN INTEREST TO PENNSYLVANIA BLUE SHIELD AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Civil Action No. 05-1030 T<br>Judge Margolis |

**THE PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT ACCOMPANYING ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. Highmark's claims with respect to its section 165 losses relating to healthcare coverage contracts were disallowed by the Internal Revenue Service, as were the claims of almost all the other similarly situated Blue Cross/Blue Shield organizations. September 29, 2003 Statutory Notice of Claim Disallowance for the tax years ended December 31, 1992, December 31, 1993, December 31, 1994, December 31, 1995, and December 31, 1996 (hereinafter "Notice of Disallowance") (Pl. Ex. 1, App. B at B-3 through B-4); Excerpts from PricewaterhouseCoopers Report (2007), "2006 Year in Review: Continuing Developments in the Taxation of Insurance Companies" (hereinafter "PWC Year in Review") (Pl. Ex. 2, App. B at B-10).

2. The Internal Revenue Service has proffered a national settlement to all of the Blue Cross/Blue Shield organizations not currently in litigation for losses arising from the cancellation or termination of healthcare coverage contracts. May 12, 2006 Letter from Internal Revenue Service, LMSB Division to an unnamed Blue Cross/Blue Shield organization (taxpayer identification redacted) (hereinafter "Settlement Offer Letter") (Pl. Ex. 3, App. B at B-13 through B-16); PWC Year in Review (Pl. Ex. 2, App. B at B-10).

3. In the national settlement offer, the Government agreed that a loss deduction is allowable upon termination of a healthcare coverage contract with respect to which the taxpayer claims a stepped-up basis as a result of the Fresh Start Basis Rule. Settlement Offer Letter (Pl. Ex. 3, App. B at B-13); Sample Form 906-c (Rev. August 1994), Closing Agreement on Final Determination Covering Specific Matters, sent by the Internal Revenue Service with Settlement Offer Letter (hereinafter "Sample Closing Agreement") (Pl. Ex. 4, App. B at B-17); PWC Year in Review (Pl. Ex. 2, App. B at B-10).

4. In the national settlement offer, the Government will allow the Blue Cross/Blue Shield organizations to deduct 80 percent of the appraised value of the terminated healthcare coverage contracts at issue, subject to an overall valuation limitation. Settlement Offer Letter (Pl. Ex. 3, App. B at B-13 through B-14); PWC Year in Review (Pl. Ex. 2, App. B at B-11).

5. The national settlement offer contemplates that a Closing Agreement will form part of the settlement which will, in effect, determine the taxpayers' section 165 deductions for all future years. Settlement Offer Letter (Pl. Ex. 3, App. B at B-14 through B-15); Sample

Closing Agreement (Pl. Ex. 4, App. B at B-17 through B-19); PWC Year in Review (Pl. Ex. 2, App. B at B-10 through B-11).

6. The settlement permanently settles the section 165 deduction issue for the parties to the settlement. Settlement Offer Letter (Pl. Ex. 3, App. B at B-15); Sample Closing Agreement (Pl. Ex. 4, App. B at B-19).

7. The outcome of the instant litigation, or any other litigation, will not affect the national settlement offer. Settlement Offer Letter (Pl. Ex. 3, App. B at B-15); PWC Year in Review (Pl. Ex. 2, App. B at B-10); Sample Closing Agreement (Pl. Ex. 4, App. B at B-19).

8. In each of its taxable years beginning in 1987, the plaintiff suffered losses when some of its healthcare coverage contracts were cancelled or terminated. Excerpt from PricewaterhouseCoopers Valuation Report dated September 10, 1998 (hereinafter "PWC Valuation Report") (Pl. Ex. 5, App. B at B-22).

9. The plaintiff determined the January 1, 1987 value of each of its lost contracts and claimed loss deductions under Code section 165 in the year of loss. PWC Valuation Report (Pl. Ex. 5, App. B at B-22).

10. The plaintiff claims loss deductions, not depreciation deductions, for the cancellation, abandonment or termination of its healthcare coverage contracts. PWC Valuation Report (Pl. Ex. 5, App. B at B-22).

11. The plaintiff properly filed an Application for Change in Accounting Method Under Revenue Procedure 87-51 on Form 3115, with its first tax return for 1987, in accordance

with the provisions of the 1986 Tax Reform Act. Application for Change in Accounting Method Under Revenue Procedure 87-51 dated September 12, 1988 (hereinafter "Application for Change in Method of Accounting") (Def. Ex. 1, App. B at B-24 through B-32).

12. In its Application for Change in Accounting Method Under Revenue Procedure 87-51, Highmark requested permission to change and use methods of accounting in compliance with the Tax Reform Act. Application for Change in Method of Accounting (Def. Ex. 1, App. B at B-32).

Respectfully submitted,

/s/ Arthur Newbold

ARTHUR NEWBOLD
Attorney of Record
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone: (215) 994-2624
Fax: (215) 655-2624

Counsel for Plaintiff

Date: April 2, 2007

Of counsel:

Frederick J. Gerhart
James J. Spadaro, Jr.
David N. Sontag
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 2nd day of April, 2007, been made on the Defendant's attorney electronically, and by mailing a copy thereof to the following address:

Karen E. Servidea, Esquire
U.S. Department of Justice
Tax Division Court of Federal Claims Section, JCB/8804
555 4th Street, N.W.
Washington, D.C. 20001

David N. Sontag