IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1030 T
(JUDGE MARGOLIS)

HIGHMARK, INC., SUCCESSOR IN INTEREST TO
PENNSYLVANIA BLUE SHIELD AND SUBSIDIARIES,
Plaintiff,
v.

THE UNITED STATES,
Defendant.

DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT ACCOMPANYING ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

1. Highmark's claims with respect to its section 165 losses relating to healthcare coverage contracts were disallowed by the Internal Revenue Service, as were the claims of almost all the other similarly situated Blue Cross/Blue Shield organizations.

a. Response: Objection.

This proposed finding is vague insofar as it depends on the definition of "similarly situated." For purposes of settlement, plaintiff is not similarly situated to other Blue Cross/Blue Shield ("BC/BS") organizations that are not in litigation. *See infra* objection a. to proposed finding no. 2.

b. Response: Objection.

To the extent that this proposed finding relates to the refund claims of other taxpayers, it is irrelevant to plaintiff's claims. Indeed, plaintiff never even cites the proposed finding in its argument in opposition to defendant's motion for summary

judgment and in support of plaintiff's cross-motion for partial summary judgment, because it has no legal relevance to the issues in this case. The only precedent remotely relevant is *International Business Machines Corp. v. United States*, 343 F.2d 914 (Ct. Cl. 1965) ("*IBM*"), a decision that has since been limited to its facts. *Knetsch v. United States*, 348 F.2d 932, 940 n.14 (Ct. Cl. 1965); *see also Florida Power & Light Co. v. United States*, 375 F.3d 1119, 1125 (Fed. Cir. 2004) (holding that the *IBM* doctrine does not apply where the taxpayer seeking relief did not apply for a private letter ruling). Plaintiff has not even attempted to argue that this case comes within the narrow confines of the *IBM* doctrine. Accordingly, the proposed finding is of no consequence to the determination of this action.

c. Further response: Objection.

Plaintiff has not demonstrated that the "2006 Year in Review: Continuing Developments in the Taxation of Insurance Companies" ("PWC Year in Review") article (Pl.'s Ex. 2) was made "by, or from information transmitted by, a person with knowledge" relevant to the proposed finding. *See* Fed. R. Evid. 803(6). In addition, to the extent that the article constitutes a summary of voluminous data, plaintiff has failed to provide defendant an opportunity to examine the underlying data. *See* Fed. R. Evid. 1006.

d. Further response: Objection.

The materials cited do not support the finding that the IRS disallowed the claims of almost all the other similarly situated BC/BS organizations. The "PWC Year in

Review" article does not say anything about the disallowance of claims brought by other BC/BS organizations.

e. Proposed revision: Highmark's claims with respect to its section 165 losses relating to healthcare coverage contracts were disallowed by the Internal Revenue Service.

2. The Internal Revenue Service has proffered a national settlement to all the Blue Cross/Blue Shield organizations not currently in litigation for losses arising from the cancellation or termination of healthcare coverage contracts.

a. Response: Objection.

To the extent that this proposed finding relates to the IRS's settlement of the refund claims of other taxpayers, it is irrelevant to plaintiff's claims. Indeed, plaintiff never even cites the proposed finding in its argument in opposition to defendant's motion for summary judgment and in support of plaintiff's cross-motion for partial summary judgment, because it has no legal relevance to the issues in this case. First, plaintiff is not similarly situated to the BC/BS organizations that are not currently in litigation. Once plaintiff filed its refund action in court, its case was referred to the DOJ, and the authority to settle its case shifted from the IRS to the Attorney General. I.R.C. § 7122(a). This authority cannot be defeated by a settlement made by the IRS with another taxpayer, since the IRS can no more settle this case indirectly by binding the DOJ to settlement terms the IRS negotiated with other taxpayers than the IRS can settle the case directly. *Slovacek v. United States*, 40 Fed. Cl. 828, 833 (Fed. Cl. 1998).

Second, even if plaintiff were similarly situated to the BC/BS organizations not currently in litigation, it has not offered any evidence that the Government abused its settlement discretion. It is well-settled that the Government's determination to compromise a case with one taxpayer does not require it to offer the same terms to other similarly situated taxpayers. *Id.* at 832; *Bunce v. United States*, 28 Fed. Cl. 500, 511 (1993). To prevail on an abuse of settlement discretion claim, a taxpayer must show both (1) that other similarly situated taxpayers have received more favorable settlements and (2) that the IRS or DOJ intentionally singled out the taxpayer for arbitrary or irrational reasons. *Slovacek*, 40 Fed. Cl. at 832. Plaintiff has not claimed that the IRS or DOJ singled it out for arbitrary or irrational reasons.

Finally, the IRS has broad discretion to settle tax cases, including for reasons, such as collectibility and effective tax administration, that are unrelated to the merits of a taxpayer's claim. *See* 26 C.F.R. § 301.7122-1. Thus, the proposed finding would not support a conclusion that the IRS previously determined that claims like plaintiff's are legally valid. Of course, such a conclusion itself would be irrelevant since "the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect." *Dickman v. Comm'r*, 465 U.S. 330, 343 (1984). The question before the Court is what the law requires on the facts of plaintiff's case, not whether or how other cases were settled.

Accordingly, the proposed finding is of no consequence to the determination of this action.

b. Further response: Objection.

Defendant incorporates by reference objection c. to proposed finding no. 1.

3. In the national settlement offer, the Government agreed that a loss deduction is allowable upon termination of a healthcare coverage contract with respect to which the taxpayer claims a stepped-up basis as a result of the Fresh Start Basis Rule.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 2.

b. Further response: Objection.

Defendant incorporates by reference objection c. to proposed finding no. 1.

4. In the national settlement offer, the Government will allow the Blue Cross/Blue Shield organizations to deduct 80 percent of the appraised value of the terminated healthcare coverage contracts at issue, subject to an overall valuation limitation.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 2.

b. Further response: Objection.

Defendant incorporates by reference objection c. to proposed finding no. 1.

5. The national settlement offer contemplates that a Closing Agreement will form part of the settlement which will, in effect, determine the taxpayers' section 165 deductions for all future years.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 2.

b. Response: Objection.

Defendant incorporates by reference objection c. to proposed finding no. 1.

c. Further response: Objection.

The proposed finding that a Closing Agreement will determine a taxpayer's section 165 deductions for all future years constitutes a conclusion of law.

6. The settlement permanently settles the section 165 deduction issue for the parties to the settlement.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 2.

b. Further response: Objection.

The proposed finding constitutes a conclusion of law.

7. The outcome of the instant litigation, or any other litigation, will not affect the national settlement offer.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 2.

b. Response: Objection.

Defendant incorporates by reference objection c. to proposed finding no. 1.

c. Further response: Objection.

The proposed finding constitutes a conclusion of law.

d. Further response: Objection.

The proposed finding does no more than assert the truism that settled cases are not normally reopened as a consequence of other litigation. The finding thus adds nothing relevant to the instant suit.

8. In each of its taxable years beginning in 1987, the plaintiff suffered losses when some of its healthcare coverage contracts were cancelled or terminated.

a. Response: Objection.

Plaintiff has not demonstrated that the PWC Valuation Report (Pl.'s Ex. 5) was made "by, or from information transmitted by, a person with knowledge" relevant to the proposed finding. *See* Fed. R. Evid. 803(6). The Report itself states that it was based on data received from other sources and that the author of the Report did not attempt to verify the information received from such sources. PWC Valuation Report (Pl.'s Ex. 5, at B-22-B-23). In addition, to the extent that the Report constitutes a summary of voluminous data, plaintiff has failed to provide defendant an opportunity to examine the underlying data. *See* Fed. R. Evid. 1006.

b. Response: Objection.

The materials cited do not support the proposed finding. First, the PWC Valuation Report (Pl.'s Ex. 5) does not state that some of plaintiff's healthcare coverage contracts were cancelled or terminated in each of the taxable years beginning in 1987. Second, the PWC Valuation Report does not show that plaintiff suffered a loss, within the meaning of I.R.C. § 165(a), each time a contract cancelled or terminated. Section 165(a) allows a deduction only to the extent that a taxpayer sustained an actual loss on an

investment. *United States v. Flannery*, 268 U.S. 98 (1925). The Report does not show that plaintiff invested any specific amount of capital in each contract that was actually lost upon the contract's termination. Finally, a taxpayer is entitled to deductions under § 165(a) only for losses that are "evidenced by closed and completed transactions, fixed by identifiable events." 26 C.F.R. § 1.165-1(b). In *Golden State Towel & Linen Serv. v. United States*, 373 F.2d 938, 944 (Ct. Cl. 1967), the Court held that this requirement means that a tax loss may be claimed only when "all or a substantial, identifiable, vendible portion of [a customer-based intangible] . . . terminate[s]." The PWC Valuation Report does not show that plaintiff experienced a loss of such a portion of its contracts in each year.

c. Further response: Objection.

The proposed finding is not one of fact, but actually a conclusion of law. It is, indeed, the question presented by this case.

d. Proposed revision: In each of its taxable years beginning in 1987, some of plaintiff's healthcare coverage contracts were cancelled or terminated.

9. The plaintiff determined the January 1, 1987 value of each of its lost contracts and claimed loss deductions under Code section 165 in the year of loss.

a. Response: Objection

Defendant incorporates by reference objection a. to proposed finding no. 8.

b. Response: Objection.

The materials cited do not support the proposed finding that plaintiff claimed a loss deduction in the same year that each contract was lost. The PWC Valuation Report

(Pl.'s Ex. 5) does not show the year of termination for all of the contracts. In addition, plaintiff admits that it does not know the year of termination for many of the contracts for which it claims a deduction in this case. *See* Pl.'s Resp. to Def.'s Second Set of Req. for Admis. No. 6 (Def. Ex. 8, App. A to Def. Reply Br. at A-4).

c. Response: Objection.

The materials cited do not support the proposed finding that plaintiff determined the January 1, 1987, value of each of its lost contracts. Plaintiff admits that the PWC Valuation Report (Pl.'s Ex. 5) did not analyze more than a few of the unique characteristics of each contract (Pl.'s Resp. to Def.'s Proposed Findings of Fact No. 31) and that the Report gathered and averaged data from all or broad categories of contracts (*id.* No. 32).

d. Proposed revision: To determine the January 1, 1987, value of each of its lost contracts, plaintiff gathered and averaged data from all or broad categories of contracts. Plaintiff then claimed loss deductions under I.R.C. § 165.

10. The plaintiff claims loss deductions, not depreciation deductions, for the cancellation, abandonment or termination of its healthcare coverage contracts.

a. Response: Agree.

11. The plaintiff properly filed an Application for Change in Accounting Method Under Revenue Procedure 87-51 on Form 3115, with its first tax return for 1987, in accordance with the provisions of the 1986 Tax Reform Act.

a. Response: Objection.

The proposed finding is irrelevant to the issues in this case. The application for change in accounting method that plaintiff filed with its original tax return for 1987 could not have secured the Commissioner's consent to either of the accounting method changes described in defendant's motion for summary judgment. Plaintiff filed the application pursuant to Revenue Procedure 87-51, which provided BC/BS organizations with an administrative procedure to expeditiously obtain the consent of the Commissioner to change methods of accounting in their first taxable year (1987). *See* Rev. Proc. 87-51, §§ 1, 3, 1987-2 C.B. 650 (1987). As a condition to obtaining the Commissioner's consent, the Procedure required, among other things, that a BC/BS organization file its tax return for its first taxable year on the basis of accounting to which it proposed to change. *Id.* § 5. Thus, assuming that it complied with the rest of the requirements in the Revenue Procedure, plaintiff's application secured the Commissioner's consent only to the accounting methods plaintiff used to report its taxable income on its original return for 1987. Because plaintiff did not use either of the new accounting methods described in defendant's motion for summary judgment as a basis for filing its original return for 1987 (or 1988 through 1994), the application did not seek or obtain the Commissioner's consent to the new methods. Indeed, if anything, this request – made pursuant to Revenue Procedure 87-51 – underlines the conclusion that plaintiff's claim in the instant suit involves a *change* in method of accounting, since it is undisputed that plaintiff's first return claimed no such losses.

b. Further response: Objection.

The proposed finding that plaintiff "properly" filed an Application for Change in Accounting Method Under Revenue Procedure 87-51 "in accordance with the provisions of the 1986 Tax Reform Act" constitutes a legal conclusion.

c. Proposed revision: Plaintiff filed an Application for Change in Accounting Method Under Revenue Procedure 87-51 on Form 3115, with its first tax return for 1987.

12. In its Application for Change in Accounting Method Under Revenue Procedure 87-51, Highmark requested permission to change and use methods of accounting in compliance with the Tax Reform Act.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 11.

b. Further response: Objection.

The proposed finding that the methods of accounting requested in the Application for Change in Accounting Method Under Revenue Procedure 87-51 are in compliance with the Tax Reform Act constitutes a conclusion of law.

Respectfully submitted,

/s/ Karen Servidea

KAREN SERVIDEA
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 616-3423*
*Fax: (202) 514-9440*
*Email: karen.e.servidea@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
W.C. RAPP
*Senior Trial Attorney*

May 3, 2007
Date

/s/ W.C. Rapp
Of Counsel