# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

HIGHMARK, INC., SUCCESSOR IN INTEREST TO PENNSYLVANIA BLUE SHIELD AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

No. 05-1030T

(Filed: August 22, 2007)

Taxes; deductions for losses from termination or cancellation of health care coverage contracts; Fresh Start Basis Rule; change in method of accounting.

*Arthur Newbold*, Dechert LLP, Philadelphia, Pennsylvania, for plaintiff. Frederick J. Gerhart, James J. Spadaro, Jr., and David N. Sontag, Dechert LLP, of counsel.

*Karen Servidea*, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., with whom were *Eileen J. O'Connor*, Assistant Attorney General, *David Gustafson*, Chief, Court of Federal Claims Section, and *W.C. Rapp*, Senior Trial Attorney, for defendant.

**OPINION**

MARGOLIS, *Senior Judge*.

This tax refund case is before the Court on cross-motions for summary judgment. The parties presented their arguments in briefs and at a hearing on June 20, 2007. Plaintiff Highmark, Inc., which is the successor in interest to Pennsylvania Blue Shield and its subsidiaries, ("Highmark") seeks at least $21,329,919, plus interest, from the defendant the United States, for alleged overpayment of federal income taxes for tax years 1991 through 1995. Specifically, Highmark claims deductions for losses from the termination and/or cancellation of health care coverage contracts.

To date, three other courts have addressed the same issue, stemming from the "Fresh Start Basis Rule" of the 1986 Tax Reform Act,[1] which subjected formerly tax-exempt Blue Cross and Blue Shield organizations to federal income taxes. Although the ultimate outcomes in the cases varied, all three courts found that the Blue Cross or Blue Shield plaintiff was entitled to the deductions if it could prove the value of the contracts. See Trigon Ins. Co. v. United States, 215 F. Supp. 2d 687, 701, 706 (E.D. Va. 2002); Capital Blue Cross v. Comm'r, 122 T.C. 224, 237-38 (2004) rev'd on other grounds 431 F.3d 117 (3d Cir. 2005); Capital Blue Cross v. Comm'r, 431 F.3d 117, 128 (3d Cir. 2005). Defendant acknowledges that there are no significant factual differences between those cases and the instant one. Transcript ("Tr.") at 6-7. After careful consideration of the briefs and oral arguments in this case, the Court agrees with those decisions and grants partial summary judgment for the plaintiff.

## FACTS

The material facts are not in dispute and are as follows. Plaintiff, including its predecessor entities, sells health insurance as a Blue Cross/Blue Shield organization. Complaint at ¶ 15. Originally, these organizations were not subject to federal income taxes. Complaint at ¶ 16. In the Tax Reform Act of 1986, however, the Congress repealed their tax-exempt status, effective January 1, 1987. Complaint at ¶ 17. The Act included provisions such as the Fresh Start Basis Rule to ease the transition to becoming taxable entities. In particular, the Fresh Start Basis Rule provided for an adjusted basis for the organization's existing assets, so that they would not be taxed on gains or losses that occurred when they were tax-exempt. H.R. Rep. No. 99-841, at II-349-50 (1986) (Conf. Rep.). In other words, if, on January 1, 1988, plaintiff sold an asset it had acquired when it was tax-exempt, it would only incur tax on the amount the asset appreciated between January 1, 1987, and January, 1, 1988. Any gains that occurred between the date plaintiff acquired the asset and January 1, 1987, would not be taxed. This scenario is accomplished by adjusting the asset's basis (the cost of creating or acquiring the asset plus any additional investment) to its fair market value on January 1, 1987. The same principles apply to losses.

In September 1995, plaintiff filed an amended return for tax year 1991, claiming loss deductions under Internal Revenue Code ("I.R.C.") § 165 for health care contracts that had been terminated or cancelled in that year.[2] Defendant's Proposed Findings of Fact ("Def's Findings of

---

[1] In general.--In the case of any existing Blue Cross or Blue Shield organization . . . for purposes of determining gain or loss, the adjusted basis of any asset held on the 1st day of such taxable year shall be treated as equal to its fair market value as of such day. Pub. L. No. 99-514, § 1012(c)(3)(A), 100 Stat. 2085, 2394 (1986).

[2] Plaintiff's counsel was unable to explain definitively why Highmark did not attempt to take the loss deduction before 1995, but suggested that it was the first year plaintiff paid regular federal income taxes because it had net operating losses and/or loss carry forwards in the previous years. Tr. at 25-26.

Fact") at ¶ 9. I.R.C. § 165 allows deductions for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a). Plaintiff's contracts originally had a basis of zero because they were self-created by Highmark or its predecessors. Def's Motion at 13, Pl's Cross-Motion at 8. Plaintiff claimed that the Fresh Start Basis Rule gave the contracts a basis equal to their fair market value on January 1, 1987, and that it suffered a loss equal to that fair market value whenever one of the contracts was terminated or cancelled after that date. Pl's Cross-Motion at 8. Plaintiff later filed an amended return for 1992 and informal refund claims for 1993 and 1994, claiming the same deductions. Def's Findings of Fact at ¶ 10. It also included deductions for terminated or cancelled contracts in its original, 1995 tax return. Def's Findings of Fact at ¶ 11.

## DISCUSSION

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The parties' briefings and oral arguments focused on the legal issues. At this point in the proceedings, they have not raised any issues of material fact.

### I. The Fresh Start Basis Rule Applies to the Deductions Plaintiff Claims

The government claims that (1) the Fresh Start Basis Rule does not adjust the basis of plaintiff's health care contracts because, as self-created assets, their basis was zero and could not be adjusted, and (2) the provision applies only to gains or losses from the sale or exchange of property, not losses from termination or cancellation of contracts. The Court turns to traditional rules of statutory interpretation to address these arguments.

The starting point for all statutory analysis is the plain language of the act itself. Fluor Enters., Inc. v. United States, 64 Fed. Cl. 461, 479 (2005) (citations omitted). If the language is clear and unambiguous, the court will look no further than the statute. Id. "The court should look beyond the plain meaning of a statute only if the language is ambiguous or a literal interpretation would frustrate the purpose behind the statute." Id. (citing Bob Jones Univ. v. United States, 461 U.S. 574, 586 (1983)). In this case, the relevant portion of the Fresh Start Basis Rule states that "for purposes of determining gain or loss, the adjusted basis of any asset held on" January 1, 1987, will be its fair market value as of that day. Pub. L. No. 99-514, § 1012(c)(3)(A).

The government's arguments turn on whether the phrases "any asset" and "gain or loss" are ambiguous. If the Court finds that they are ambiguous, defendant points to the legislative history as proof that the Congress did not intend for plaintiff and similar organizations to take these deductions. The conference report that accompanied the Tax Reform Act of 1986 specifically states that "[t]he basis step-up is provided solely for purposes of determining gain or loss upon sale or exchange of the assets, not for purposes of determining amounts of depreciation or for other purposes." H.R. Rep. No. 99-841, at II-350 (1986) (Conf. Rep.). Yet, on these

issues, the Act's language is clear and unambiguous. Trigon Ins., 215 F. Supp. at 699; Capital Blue Cross, 122 T.C. at 236. As such, examination of legislative history is unnecessary and inappropriate, and the Court will not stray from the plain language of the statute other than to understand the purpose of the statute.

First, the statute clearly says that the adjusted basis applies to "any asset" a Blue Cross or Blue Shield organization held on January 1, 1987. Nothing in the plain language of the Fresh Start Basis Rule restricts its application to those assets that already had a positive basis before the statute was enacted. Yet, the Congress previously had demonstrated in other instances a willingness and ability to limit basis adjustments. In particular, when it repealed the tax-exempt status of the Federal Home Loan Mortgage Corporation in 1984, the Congress confined the adjusted basis for determining losses to the lesser of the fair market value of the asset or its actual basis. Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 177(d)(2)(A)(i), 98 Stat. 494, 711 (1984). The Congress chose not to include similar limitations in the Fresh Start Basis Rule for the Blue Cross and Blue Shield organizations, and without them there is no reason to believe that "any asset" means anything other than what it says. As such, the health care contracts at issue are subject to the Fresh Start Basis Rule if they are assets.

The court in Trigon Ins. found that the health insurance contracts in that case were assets because they "produce value to the owner and they can be transferred for consideration." 215 F. Supp. at 696. Likewise, the Third Circuit found that the contracts in Capital Blue Cross were assets because "each contract constitutes the right to a continuing stream of future payments." 431 F.3d at 125-26. In addition, the circuit court relied on Newark Morning Ledger Co. v. United States to hold that a Blue Cross organization's health care contracts are individual assets, rather than indivisible or mass assets as the government had claimed. Id. at 126-27. Newark Morning Ledger had declared that a newspaper's subscriber base was not a mass asset; it was a set of identifiable components, each of which could be valued and depreciated over time. See 507 U.S. 546, 567-68 (1993). As noted above, Highmark's contracts are essentially the same as those at issue in Trigon Ins. and Capital Blue Cross. See Tr. at 6-7. In light of these decisions and the factual similarities among the cases, the Court holds that Highmark's health insurance contracts are assets, and they therefore are encompassed by the Fresh Start Basis Rule.

The last issue is whether the termination or cancellation of these health care contracts qualifies as a loss under the Fresh Start Basis Rule. Both the Eastern District Court of Virginia and the United States Tax Court found that it was. Trigon Ins., 215 F. Supp. at 699-700 (E.D. Va.); Capital Blue Cross, 122 T.C. at 236. (The government did not appeal that portion of the Tax Court's decision, so the Third Circuit did not address it on appeal. 431 F.3d at 125.) Although the statute itself places no limiting language on the phrase "gain or loss," the government contends that the adjusted basis in the Fresh Start Basis Rule is available only for losses resulting from the sale or exchange of assets, as stated in the conference report. The Court, however, finds no ambiguity in the words of the statute that would allow for reference to or clarification from the conference report. If the Congress had wanted to limit the Fresh Start Basis Rule to losses from sales or exchanges, it easily could have inserted the same phrasing that

was used in the conference report into the statutory text. Trigon Ins., 215 F. Supp. at 699-700. The Congress did not do so in 1986, and the Court will not do so retroactively. The Fresh Start Basis Rule applies to any losses, including those arising from the termination or cancellation of Highmark's health insurance contracts.

II. Plaintiff Did Not Change its Method of Accounting

During briefing and oral argument, the government also introduced a new line of attack that previous courts had not addressed. According to this argument, even if the Fresh Start Basis Rule applies to Highmark's loss of health care contracts from terminations or cancellations, plaintiff is not entitled to a refund because it made an unauthorized change in its accounting method when it filed its amended tax returns. Taxpayers must obtain consent from the Treasury Secretary before changing their method of accounting for computing taxable income. I.R.C. § 446(a), (e). This requirement applies to both the overall method of accounting – i.e., cash or accrual methods – and any material items used in the calculations. 26 C.F.R. § 1.446-1(e)(2) (1995).[3] Defendant asserts that when Highmark claimed the loss deductions after several years

[3] (2)(i) Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. Consent must be secured whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder.

(ii)(a) A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan. Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment. A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction. . . .

(b) A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability (such as errors in computation of the foreign tax credit, net operating loss, percentage depletion or investment credit). Also, a change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction. For example, corrections of items that are deducted as interest or salary, but which are in fact payments of dividends, and of items that are deducted as business expenses, but which are in fact personal expenses, are not changes in method of accounting. . . . A change in the method of accounting also does not include a change in treatment resulting from a change in underlying facts. On the other hand, for example, a correction to require depreciation in lieu of a deduction for the cost of a class of depreciable assets which has been consistently treated as an expense in the year of purchase involves the question of the proper timing of an item, and is to be treated as a change in method of accounting.

(c) A change in an overall plan or system of identifying or valuing items in inventory is a

of not claiming it, plaintiff changed its method of accounting with respect to the health care contracts and the expenses incurred in creating them.

To determine whether a change involves a method of accounting, Treasury regulations focus on timing. An item is material and therefore involves a method of accounting if changing its treatment affects the time for including it in income or taking it as a deduction. 26 C.F.R. § 1.446-1(e)(2)(ii)(a). Conversely, a change to the type of income reported or deduction taken but not the year of reporting does not involve a method of accounting. Id. at 1.446-1(e)(2)(ii)(b).

Highmark submitted its first amended return on this issue eight years after the Fresh Start Basis Rule was enacted, but it never accounted for the losses from contract terminations and cancellations in a different way. It simply did nothing. Although the government was unable to point to any cases in which failure to take a deduction as soon as allowable caused a change in accounting method when the taxpayer actually claimed the deduction, defendant nonetheless argues that Highmark changed its method of accounting when it claimed the losses from termination or cancellation of its health care contracts. By taking the deductions, Highmark effectively lowered its lifetime income by offsetting its income with the amount of the losses resulting from the contract terminations and cancellations. The deductions did not change the year in which the deductions were claimed because they can only be taken in the year in which the losses are incurred, i.e., the year the contracts are terminated or cancelled. See I.R.C. § 165(a).

Defendant's final argument on the method of accounting front is that, by taking the loss deductions, plaintiff changed the way it accounted for the costs of creating its health care contracts. In general, a business can account for its costs as part of ordinary and necessary business expenses in the year incurred ("expensing"), or as part of the basis of a capital asset, the value of which is depreciated over time ("capitalizing"). The government claims that Highmark has changed from expensing the costs of creating its health care contracts to capitalizing them, which therefore affects the timing of reporting income and claiming deductions. Tr. at 16-17. In other words, Highmark went from reporting its costs annually to over time. Defendant argues that the adjusted basis plaintiff claims for the contracts under the Fresh Start Basis Rule represents the cost of their creation, and that by deducting that amount Highmark has now capitalized its expenses. Id. The problem for the government is that the Fresh Start Basis Rule defines the adjusted basis as the fair market value of an asset, not the cost of creating it. The two values are not necessarily related. As such, Highmark did not capitalize the costs of creating its contracts and did not change its method of accounting.

The Court has considered defendant's other arguments and finds them without merit or not applicable. In particular, at oral argument, the government relied on a 1997 Revenue

---

change in method of accounting. Also a change in the treatment of any material item used in the overall plan for identifying or valuing items in inventory is a change in method of accounting. 26 C.F.R. § 1.446-1(e)(2)(i)-(ii).

Procedure to argue that Highmark changed its method of accounting when it filed its amended return because the change *could have* affected the timing of the deduction. Tr. at 12-14 (citing Revenue Procedure 97-27). Aside from the fact that the government did not make this argument in the briefs, this Revenue Procedure was published after Highmark filed its first amended return claiming loss deductions for its health care coverage contracts. As such, the Court did not consider this argument in reaching its conclusions.

## CONCLUSION

The text of the Fresh Start Basis Rule unambiguously applies to losses incurred by the termination or cancellation of Highmark's health care contracts, and Highmark did not change its accounting method when it first claimed these loss deductions. For all of these reasons, the Court **DENIES** defendant's motion for summary judgment and **GRANTS** partial summary judgment for plaintiff.

s/Lawrence S. Margolis
LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims

August 22, 2007